HOMELAND, INC. v. CHARLES E. BACKER AND MARIE B. BACKER v. CARLOS GOMEZ AND WIFE, BARBARA J. GOMEZ

No. 8512SC572

(Filed 17 December 1985)

1. **Landlord and Tenant § 17— termination of lease for waste—insufficiency of evidence**

   In an action to terminate plaintiff's thirty-year lease with defendants, the trial court erred in granting directed verdict for plaintiff on the issue of defendants' causing or permitting waste to the leased premises where there was plenary evidence that defendants made extensive improvements to all the rental units on the property; since defendants had a thirty-year lease, they would be expected to change and improve the property in many ways; and the two houses which defendants moved could be replaced in their original positions before the lease terminated.

2. **Landlord and Tenant § 18; Estoppel § 8— termination of lease for nonpayment of rent—refusal to accept rent checks—estoppel—sufficiency of evidence**

   In an action to terminate a lease on the ground of nonpayment of rent, evidence that defendants attempted to tender the rent and their checks were

refused by plaintiff should have gone to the jury to determine whether plaintiff's refusal of defendants' checks estopped plaintiff from terminating the lease on the ground of nonpayment, and it was error to separate the issues of nonpayment of rent and estoppel.

APPEAL by defendants from *Herring, Judge.* Amended judgment entered 4 October 1984 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 20 November 1985.

This is a civil action wherein plaintiff lessor seeks to terminate its thirty-year lease with defendants on the grounds that defendants breached the terms of their lease agreement. Plaintiff is a close corporation, owned by members of the Fleishman family. The leased property, located on Bragg Boulevard in Cumberland County, consisted of thirty-two residential rental units, and a small building that had been used previously as a grocery store. The monthly rent for the property was $1,000.00.

The lease agreement provides, in pertinent part:

8. LESSEES shall not assign this lease or sublet any part of the demised property . . . without the written consent of LESSOR.

9. It is expressly agreed that if any monthly installment of rent as herein called for remain overdue and unpaid for a period of ninety (90) days LESSOR may at its option at any time during such default declare the lease terminated, canceled, and may re-enter and take possession of the said premises and it is further agreed that if LESSEES shall fail to comply with or abide by any other of the conditions of this lease agreement, LESSOR may, at its option, declare the lease terminated and canceled, re-enter the premises and take possession of the same.

On 1 September 1983 plaintiff filed a complaint alleging that defendants had breached the lease agreement by assigning, subletting, committing waste, and failing to pay the monthly rental since May 1983. Plaintiff requested that the court declare the lease terminated and award plaintiff possession of the premises, the rentals defendants had received from the subtenants, $15,000.00 for the reasonable value of the two houses defendants had removed, and $10,000.00 for alterations to the building sub-

leased to John P. Humphries d/b/a Red Barn Coin Center and Thrift Shop.

On 29 September 1983 defendants answered, alleging as affirmative defenses that at the time the parties entered into the lease agreement they contemplated and expected that defendants had the authority to sublease or assign the rental units on the property; that subsequent to the execution of the lease plaintiff knew, or with reasonable diligence should have known, of defendants' subleases; and that the assignees were liable for any waste.

The parties stipulated prior to trial that defendants subleased part of the leased property and assigned another portion of the property to Carlos and Barbara Gomez, John P. Humphries d/b/a Red Barn Coin Center and Thrift Shop, and Tart Auto Sales, Inc. The parties also stipulated that defendants had moved houses which had been located at 100 and 102 Fleishman Street.

At trial plaintiff introduced evidence tending to show that defendants breached the lease agreement. Defendants' evidence, which they contend on appeal was sufficient to withstand plaintiff's motion for directed verdict, tended to show the following: In 1972 Charles Backer made extensive repairs to the rental houses which had been in very poor condition. He spent $1,200.00 per house on electrical wiring; replaced floors and ceilings; installed insulation; repaired walls and plumbing; and repainted each house. He also brought 1,200 loads of fill dirt into the area at $20.00 per load. In 1973 Backer visited Maurice Fleishman, the secretary of Homeland, Inc., at that time, to discuss paragraph eight of the lease agreement which provided that he could not sublet the property. Fleishman assured Backer that there was no problem, and agreed to delete the paragraph. Backer crossed out the paragraph himself, and Fleishman said there was no need to retype the lease.

According to plaintiff, the alleged waste occurred when two houses, located at 100 and 102 Fleishman Street, were moved, and when Backer remodeled the Red Barn. Backer, however, introduced evidence which tended to show that these were improvements, rather than waste. According to Backer, the house at 100 Fleishman Street was on low land, and it flooded every time it rained. Backer moved the house to higher ground to prevent further flooding, and filled in the space where the house had been.

The house at 102 Fleishman Street was moved to another lot, at sublessee Tart's request. Tart paid Backer $5,000.00 for the house. The Red Barn was a building in disrepair next to John Humphries' coin shop. Humphries' coin shop had been there before Backer leased the property from plaintiff. There was a pile of junk between the coin shop and the Red Barn. Backer contracted with the owners of the Red Barn to lease it for $100.00 per month. He cleaned up the junk pile and remodeled the two buildings by joining them together, building a new front, and a new roof. According to Humphries, after these repairs and improvements, Maurice Fleishman told him, "Charley Backer sure is fixing that area up nice out there, isn't he?" Humphries also testified that on another occasion Fleishman said, "[Backer] sure fixed you a nice building."

Defendants' evidence regarding the issue of nonpayment of rent was as follows: Backer testified that he had always paid his rent, although occasionally the checks were a few days late. He personally delivered the March and April 1983 checks to Maurice Fleishman's office. On 27 April 1983 plaintiff's attorney wrote to defendants, notifying them that the subleases were in violation of the lease agreement, and that moving the two houses was an act of waste and in violation of G.S. 42-11. The letter stated that plaintiff elected to terminate the lease due to the violations, and would re-enter on or before 31 May 1983. Plaintiff demanded an accounting of the rentals received from the sublessees, and reimbursement of the fair market value of the two houses which had been moved. The letter stated that plaintiff had received but not negotiated the March and April 1983 rental checks. After receiving this letter Backer went to Maurice Fleishman's office with his check for May 1983 rent. Fleishman refused to accept the check and said to Backer, "Don't pay me another nickel."

On 29 August 1983 plaintiff's counsel sent a second letter to defendants, notifying them that none of the breaches and violations mentioned in the previous letter had been cured, and that the monthly rental payments for May, June, July and August had not been tendered, which constituted another breach of the lease agreement. In December 1983 the clerk of superior court tendered a check for $8,000.00 for Backer, which plaintiff refused.

At the close of all the evidence the trial judge granted plaintiff's motions for directed verdict on the issues of whether defend-

ants had breached paragraph nine of the lease by failing to pay the monthly rental and whether defendants had caused or permitted waste to the leased premises. The jury found that defendants' "waste" was to such an extent as to cause termination of the lease, and awarded plaintiff damages of $32,000.00 for unpaid rental payments, and $8,150.00 for "waste." Defendants appealed.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by John E. Raper, Jr., for plaintiff, appellee.*

*MacRae, Perry, Pechmann, Boose & Williford, by James C. MacRae and Reid, Lewis & Deese, by Renny W. Deese for defendants, appellants.*

HEDRICK, Chief Judge.

Defendants assign error to the trial court's granting plaintiff's motion for directed verdict on the issues of waste and non-payment of rent.

On a motion for directed verdict the trial court must consider the evidence in the light most favorable to the non-moving party, and may grant the motion only if, as a matter of law, the evidence is insufficient to justify a verdict in favor of the non-moving party. *Rappaport v. Days Inn*, 296 N.C. 382, 250 S.E. 2d 245 (1979). A directed verdict in favor of the party with the burden of proof is proper only when the proponent has established a clear and uncontradicted prima facie case and the credibility of his evidence is manifest as a matter of law. *Bank v. Burnette*, 297 N.C. 524, 256 S.E. 2d 388 (1979). Thus, the first question before us is whether plaintiff established a clear and uncontradicted prima facie case on the issue of defendants' waste.

[1] Waste, at common law, was any permanent injury with respect to lands, houses, gardens, trees, or other corporeal hereditaments by the owner of an estate less than a fee. *Fleming v. Sexton*, 172 N.C. 250, 90 S.E. 247 (1916). Specifically in reference to the lessor-lessee situation, waste has been defined as an implied obligation in every lease on the part of the lessee to use reasonable diligence to treat the premises in such a manner that no injury is done to the property. *Casualty Co. v. Oil Co.*, 265 N.C. 121, 143 S.E. 2d 279 (1965). The remedy and judgment for waste, as set forth in G.S. 1-533 is that "the judgment may be for

---

Homeland, Inc. v. Backer

---

damages, forfeiture of the estate of the party offending, and eviction from the premises."

In the instant case the evidence does not conclusively show that defendants committed waste. On the contrary, there was plenary evidence that defendants made extensive improvements to all the rental units on the property. Since defendants had a thirty-year lease, they would be expected to change and improve the property in many ways. The two houses that Backer moved could be replaced in their original positions before the lease terminated. We find that plaintiff has failed to establish a clear and uncontradicted prima facie case on the issue of waste. Therefore the trial court erred in entering a directed verdict for plaintiff, and the question of whether defendants committed waste should be determined by the jury.

[2]    Additionally, we do not find that plaintiff's evidence was sufficient to justify a directed verdict on the issue of nonpayment of rent. Defendants introduced evidence which tended to contradict plaintiff's evidence, and raised a question of estoppel. Backer testified that he tendered his check for the May 1983 rent, and it was refused by plaintiff. Backer was told that plaintiff would not accept any further payments and he was subsequently notified that the lease was terminated. This evidence, that Backer attempted to tender the rent and his checks were refused by plaintiff, should have gone to the jury to determine whether plaintiff's refusal of defendants' check estopped plaintiff from terminating the lease on the grounds of nonpayment. Plaintiff has not established a clear and uncontradicted prima facie case on the issues of nonpayment and estoppel, and the trial court erred in granting plaintiff's motion for a directed verdict. Moreover, we find that the court erred in separating the issues of nonpayment of rent and estoppel, and they should be submitted to the jury as one issue.

In conclusion, we find that the trial court erred in granting plaintiff's motions for directed verdict and such error prejudiced defendants' case as to the remaining issues, requiring a new trial on all issues.

Reversed and remanded.

Judges EAGLES and MARTIN concur.