THE TOWN OF HIGHLANDS, A NORTH CAROLINA MUNICIPAL CORPORATION, ON BEHALF OF ITS CITIZENS AND INDIVIDUALLY AS AN OWNER OF PROPERTY IN THE TOWN OF HIGHLANDS; AND DENNIS F. WILSON, PLAINTIFFS V. GROVER WILLIAM EDWARDS, HELEN LOUISE MEISEL, AND VIRGINIA MAE FLEMING; HOWARD WAYNE BROWN AND WIFE, JANIE CRESWELL BROWN; EARL MONROE JONES, TRUSTEE OF THE EARL MONROE JONES TRUST; ARTHUR A. LEWIS AND WIFE, JANE A. LEWIS; JAMES LUTHER RAMEY AND WIFE, MAXINE BROWN RAMEY; LOUIS W. REESE, MARTHA R. LAMB, JOSEPH RONALD REESE AND DANIEL Q. REESE; RANDOLPH T. SHAFFNER AND WIFE, MARGARET RHODES SHAFFNER; ANN KELSEY STEWART; PETER KELSEY STEWART; PETER KELSEY; HARLAN P. KELSEY, III; SETH LOW KELSEY, JR.; JOSEPH RIDGEWAY KELSEY; CHARLES SAWYER; KATHERINE HART ZIMMERMAN; SALLY HART WHITING; JOHN HART, JR.; THE UNKNOWN HEIRS OF SAMUEL T. AND KATHERINE E. KELSEY AND THE CHARLESTON LIBRARY SOCIETY, DEFENDANTS

No. COA00-221

(Filed 19 June 2001)

**Highways and Streets— unopened—original map missing**

The trial court erred by granting a directed verdict for plaintiffs in a declaratory judgment action seeking a determination of the rights, duties, and liabilities of the parties concerning portions of streets which had never been opened by the Town where

the origin of the Town dated to 1875 when Samuel Kelsey began to sell lots and parcels; a map of the Kelsey property subdivided into lots and streets was filed and recorded in 1944, but there is nothing to show who recorded it or its source and plaintiffs concede that the original map or plat cannot be found; the Town passed a resolution in 1984 accepting the "offer of dedication" contained in the map recorded in 1944 (the Kelsey map) and resolving to open the streets as required; defendants objected and attempted to file notices of withdrawal of the unopened streets; and the Town filed this action. Without the original map or plat used in conveying lots, there is no way to know whether the portions of streets disputed in this case were included. The deeds introduced by plaintiffs do not mention or incorporate the Kelsey map, some of the lot numbers differ from the map, the map contains no ascertainable monuments and few metes and bounds descriptions, and there are discrepancies between the results of the measurements made by the court surveyor and the distances stated in the deeds. The evidence presented by plaintiffs was not manifest as a matter of law and the evidence presented by defendants was sufficient to take the case to the jury.

Appeal by defendants from judgment entered 19 July 1999 by Judge Raymond A. Warren in Macon County Superior Court. Heard in the Court of Appeals 12 January 2001.

*Coward, Hicks & Siler, P.A., by William H. Coward, for plaintiffs-appellees.*

*Jones, Key, Melvin & Patton, P.A., by Richard Melvin, for defendants-appellants.*

CAMPBELL, Judge.

The Town of Highlands ("Town") and an individual citizen owning property in the Town (jointly, "plaintiffs") brought a declaratory judgment action seeking a determination as to the rights, duties, and liabilities of the parties concerning portions of certain streets which had never been opened by the Town. Defendants are residents of the Town who owned property which would be affected by the opening of these streets. At the close of all the evidence, the trial court directed a verdict in favor of plaintiffs and entered a judgment in which the court answered three crucial "issues of fact," on which

TOWN OF HIGHLANDS v. EDWARDS

[144 N.C. App. 363 (2001)]

plaintiffs bore the burden of proof, in favor of plaintiffs.[1] The trial court ruled that there was "only one permissible legal inference" to be drawn from the evidence as to each of these three issues and thus plaintiffs were entitled to an affirmative answer to each as a matter of law. The court then concluded that the unopened portions of the streets in question had been dedicated to the Town and could be opened by the Town without the need for condemnation of rights-of-way. The trial court entered judgment accordingly.

Defendants appealed from this judgment contending that at the very least there were issues of fact which required a jury determination, and that as a result, the trial court erred in directing a verdict for plaintiffs. We agree.

---

1. These three issues and the trial court's answers were as follows:

  1. Did S. T. and Katherine Kelsey, during their lifetimes, offer for public use the rights of way as shown on the survey by W. Edward Hall dated March 19, 1998 including the third revision dated October 10, 1998, for 5th Street, 4 1/2 Street and Poplar Street, including the unimproved portions of said rights of way?

  The burden of proof on this issue is on the plaintiffs. On this issue the Court finds that the evidence is almost wholly documentary in nature, that no human party survives from the time of the alleged dedication, that the evidence is credible and that only one permissible legal inference can be drawn from the evidence presented and that evidence proves as a matter of law that the Plaintiffs are entitled to an affirmative answer to this issue.

  2. Did the town of Highlands accept the proposed dedication?

  The burden of proof on this issue is on the Plaintiffs. On this issue the Court finds that the evidence is almost wholly documentary in nature, that no human party survives from the time of the alleged original dedication or the early years of the town, that the evidence is credible and that only one permissible legal inference can be drawn from the evidence presented and that evidence proves as a matter of law that the Plaintiffs are entitled to an affirmative answer to this issue.

  3. At what point in time did the town accept the proposed dedication of 5th Street, 4 1/2 Street and Poplar street, including the unimproved portions of said rights of way?

  On this issue the burden of proof is on the Plaintiffs to show some definite acceptance. The court finds that the evidence is almost wholly documentary in nature, that no human party survives from the time of the alleged original dedication or the early years of the town, that the evidence of early acceptance is credible and that only one permissible legal inference can be drawn from the evidence presented and that evidence proves as a matter of law that the unopened portions of all three streets were accepted as part of the structure of the town and for public use before 1900 and long before the purported resolution of acceptance in 1984.

A motion for directed verdict, requires that the trial court consider the evidence in the light most favorable to the non-movant, and determine whether the evidence is sufficient as a matter of law to be submitted to the jury. *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 169, 510 S.E.2d 690, 696 (1999). "A directed verdict in favor of the party with the burden of proof is proper only when the proponent has established a clear and uncontradicted *prima facie* case and the credibility of his evidence is manifest as a matter of law." *Homeland, Inc. v. Backer*, 78 N.C. App. 477, 481, 337 S.E.2d 114, 116 (1985). With this guiding principle in mind, we turn to the case at hand.

The Town was established in the late 1800's. Its origin dates back to 1875 when Samuel T. Kelsey ("Kelsey") purchased approximately 800 acres of mountain land and began to sell lots and parcels out of this purchase. In 1883 the Town was chartered and eventually assumed the maintenance of those streets which had been opened for use by the public. The streets at issue here, portions of 5th, 4 1/2, and Poplar Streets, were not open then and have never been opened.

At the heart of the controversy is the so-called "Kelsey Map." This map purports to be a map of the original Kelsey property as subdivided into lots and streets. On this map, the disputed portions of 5th, 4 1/2, and Poplar Streets are depicted as part of the streets laid out on the map. The "Kelsey Map" was filed and recorded in the Macon County Register of Deeds in 1944.

There is nothing in the record to show who recorded the "Kelsey Map," and nothing to indicate the source of the map which was recorded. The map contains no surveyor's certification and it appears to be no more than a skeletal layout of the streets and lots as opposed to a metes and bounds plat of these streets and lots. Very few of these lots contain metes and bounds descriptions, and some are not even numbered, but instead contain only a person's name as identification of the lot.

Despite the lack of information authenticating the "Kelsey Map," the Town, in 1984, passed a resolution "accepting" the "offer of dedication of streets, alleys, and rights-of-way" contained in the map and resolving to open the unimproved portions of these streets as required, given the needs of the Town. Defendants objected to this course of action and some of them attempted to file notices of withdrawal of the disputed, unopened streets pursuant to N.C. Gen. Stat. § 136-96. In response, the Town filed the instant suit for declaratory

judgment to determine the respective rights of the parties to the property in question.

We look first at the law regarding dedications. A dedication of property to the public consists of two steps: (1) an offer of dedication, and (2) an acceptance of this offer by a proper public authority. *Cavin v. Ostwalt*, 76 N.C. App. 309, 311, 332 S.E.2d 509, 511 (1985). An offer of dedication can be either express, as by language in a deed, or implied, arising from the "conduct of the owner manifesting an intent to set aside land for the public." *Bumgarner v. Reneau*, 105 N.C. App. 362, 365, 413 S.E.2d 565, 568, *modified and aff'd.*, 332 N.C. 624, 422 S.E.2d 686 (1992). In either case, whether express or implied, it is the owner's intent to dedicate that is essential. *See, Milliken v. Denny*, 141 N.C. 224, 229-30, 53 S.E. 867, 869 (1906); *Nicholas v. Salisbury Hardware & Furniture Co.*, 248 N.C. 462, 468, 103 S.E.2d 837, 842 (1958).

Once the offer of dedication is made, it must be accepted to be effective. *Rowe v. Durham*, 235 N.C. 158, 161, 69 S.E.2d 171, 173 (1952). In the case of a municipality, the acceptance must take place in some legally recognized form, either expressly by a resolution, order, or formal ratification, or impliedly by use and control of the area by public authorities for a period of 20 years or more. *Bumgarner*, 105 N.C. App. at 366-67, 413 S.E.2d at 569, *modified and aff'd.*, 332 N.C. 624, 422 S.E.2d 686 (1992). An offer of dedication can be revoked at any time prior to acceptance, but once acceptance is made, it becomes irrevocable. *Cavin v. Ostwalt*, 76 N.C. App. 309, 312, 332 S.E.2d 509, 511 (1985); *Rowe v. Durham*, 235 N.C. 158, 160, 69 S.E.2d 171, 172 (1952).

Plaintiffs claim that Kelsey relied on a map or plat from which he sold the lots, and that this is evidence of his intent to dedicate the streets contained in that map or plat to the public. Generally speaking, "the sale of lots by reference to a map or plat which represents a division of a tract of land into streets and lots constitutes an offer to dedicate such streets to public use." *Andrews v. Country Club Hills*, 18 N.C. App. 6, 8, 195 S.E.2d 584, 585 (1973). However, plaintiffs here have failed to produce the map or plat from which the lots were actually sold. Indeed, plaintiffs concede that the original map or plat and subsequent maps made by the Town as early as 1899, cannot be found. Without this evidence, we have no way of knowing whether the original map used by Kelsey in conveying the lots of the Town included the portions of 5th, 4 1/2, and Poplar Streets that are disputed here.

Plaintiffs have also introduced into evidence 143 deeds showing a "quilt-like pattern of lots with a definite street system in between," which they contend proves the dedication of the contested streets, including the disputed portions. Even with this additional evidence, there is not a sufficient basis for the trial court to have determined all legal inferences in favor of plaintiffs and to have directed a verdict in favor of plaintiffs. In order for this "quilt-like pattern" to have been meaningful, plaintiffs would have had to show how the property described in each deed was placed on the ground, the relationship of the properties to what would be streets running between the lots, and that the disputed portions of 5th, 4 1/2, and Poplar Streets, even though unopened, were intended to have been part of the original scheme of conveyance of these properties and streets as plaintiffs claim.

Plaintiffs further contend that when an individual offers to dedicate a street and the same is accepted, the whole street has been accepted even if only a portion of the street is opened. Assuming *arguendo* that there was an offer of dedication of the streets as contended by plaintiffs (even though the entire street was not opened), we have no definitive proof that the streets in question were ever intended to extend beyond the present boundaries of the opened streets. Kelsey could have just as easily intended for these streets to end at their present termini. " 'There can be no such dedication contrary to the intention of the landowner.' " *Milliken*, 141 N.C. at 230, 53 S.E. at 869 (quoting Leonard A. Jones, *A Treatise on the Law of Easements* § 425, at 335-36 (1898)). "It would be a dangerous invasion of rights of property, after many years and after the removal by death or otherwise of the original parties to the deed and conditions have changed, to impose, by implication, . . . such burdens on land." *Id.* at 231, 53 S.E. at 870. Without proof as to Kelsey's intent, we refuse to speculate on whether or not he intended to dedicate the portions of the streets here at issue.

The Town argues that the "Kelsey Map" and the deeds to the lots of the town prove Kelsey's intent to dedicate the disputed portions of 5th, 4 1/2, and Poplar Streets, which it then "accepted" by the 1984 resolution. Despite the trial court's findings, defendants have shown that there is more than "only one permissible legal inference [that] can be drawn from the evidence presented." First, none of the deeds introduced by plaintiffs mention the "Kelsey Map" or incorporate it by reference. Second, the lot numbers in some of these deeds are different from the lot numbers on the "Kelsey Map" that they supposedly

represent, which tends to indicate that a different map may have been used when .conveying the lots. Third, the "Kelsey Map" contained no ascertainable monuments and few metes and bounds descriptions, which also tends to indicate that a different map may have been used in conveying the lots. Finally, there are discrepancies between the results of the measurements made by the court surveyor (W. Edward Hall who prepared the surveys referred to in issue number one) regarding the properties in dispute, and the distances stated in the actual deeds to the property.

As stated above, a directed verdict considers the evidence in the light most favorable to the non-movant (defendants here) to determine if it is sufficient to go to the jury; and a directed verdict in favor of the party with the burden of proof (plaintiffs) is improper unless the evidence is manifest as a matter of law. We find that the evidence presented by plaintiffs was not manifest as a matter of law, and that the evidence presented by defendants was sufficient to require that the case be taken to the jury. We therefore conclude that the trial court erred in directing verdict for plaintiffs, and remand for a jury trial.

Reversed and remanded.

Judges WALKER and HUNTER concur.