HENSLEY v. SAMEL

[163 N.C. App. 303 (2004)]

———————————

EARLENE B. HENSLEY, Plaintiff v. SANFORD SAMEL and wife ROBERTA J. SAMEL; KEITH PRESNELL and wife MICHELE PRESNELL; and LLOYD A. ALLEN and wife IMAJEAN ALLEN, Defendants

No. COA02-1435

(Filed 16 March 2004)

1. **Real Property— tract revealed by new survey—action to quiet title**

Partial summary judgment was properly granted for plaintiff on her claim to quiet title to a tract revealed by a new survey. Although plaintiff and her husband may have mistakenly believed that they had conveyed away all of the property in the subdivision, plaintiff's evidence clearly showed that she has superior title to the additional tract.

2. **Real Property— subdivision roads—use by owner of original tract**

The trial court erred by finding that plaintiff was estopped from using the roads in a subdivision developed by plaintiff and her husband after a new survey added land to the original tract. Those who purchase lots in a subdivision by reference to a plat without receiving an ownership interest in the roads have only an expectation that the roads will remain open, and the fee simple

owner may use those roads to access property outside the subdivision as long as the use does not interfere with that of the lot owners. Defendants here made no showing that plaintiff's use of the roads would interfere with their use, and summary judgment should have been granted for plaintiff.

Appeal by plaintiff from order entered 19 July 2002 by Judge Hal Harrison; and appeal by defendants from order entered 2 November 2001 by Judge James L. Baker, Jr., both in the Superior Court of Yancey County. Heard in the Court of Appeals 26 August 2003.

*Roberts & Stevens, P.A., by Wyatt S. Stevens and Kenneth R. Hunt, for plaintiff.*

*Little & Sheffer, P.A., by Stephen R. Little, for defendants.*

HUDSON, Judge.

At its core, this case involves a dispute over the ownership and access to a small (1.826 acre) tract of land. The trial court ruled that the plaintiff owned the tract as well as the roadways in the subdivision, but that she was estopped from using the roads to access the tract. For the reasons discussed below, we affirm in part, reverse in part, and remand.

In 1969, Plaintiff, Earlene B. Hensley, and her husband, Ben Hensley ("the Hensleys"), received by warranty deed from Charlie Fox and the guardian for Lubriga Fox an approximately fourteen acre tract of land in Burnsville, North Carolina. The "Fox Deed" describes the northern boundary of this fourteen acre tract of land as being "Dodd's line." The Hensleys created a subdivision ("the Hensley Subdivision") consisting of thirty-two individual lots from what they believed to be the entire fourteen acre parcel. They recorded a plat of the Hensley Subdivision in the Yancey County Registry, and began to convey the lots to purchasers. By the early 1980s, they had sold all thirty-two lots. Related to this appeal are lots 6, 7, 8, 9, 30, and 31, all located on the northeastern boundary of the Hensley Subdivision and abut the disputed tract of land.

Defendants Keith and Michele Presnell ("the Presnells") purchased lots 6 and 7 from the Hensleys in 1988. The deed to the Presnells describes the lots as "adjoining . . . the Dodd lands on the north and east" and contains the following metes and bounds description of lot 7:

BEGINNING on an iron pipe, the northeast corner of the Ben Lee Hensley Sub-division and runs S 26% 15 min E 99.5 feet to an iron pin, northeast corner of Lot No. 6; thence N 89% 42 min W 138.88 feet to a point in the eastern margin of a road right of way; thence with the eastern margin of said road right of way N 33% 37 min W 78.4 feet to an iron pin in the northern boundary line of said sub-division; thence with the Dodd line N 80% 00 min E 142.7 feet to the BEGINNING.

These descriptions are according to a survey and plat dated 26 August 1969, recorded in Yancey County Map Book 1, page 115.

Defendants Sanford and Roberta J. Samel ("the Samels") own lots 8 and 9, which they purchased in 1994 from Jean Ellis, who purchased the lots from the Hensleys in 1969. The deed from Jean Ellis to the Samels contains the following description of lots 8 and 9:

Lots 8 and 9 as shown by plat of the property dated 26 August, 1969, entitled "Property of Ben Lee Hensley" on file in the Office of the Register of Deeds for Yancey County in Map Book 1, page 115, and reference is hereby made to such public record for a more definite description.

In 1996, defendants Lloyd A. and Ima Jean Allen ("the Allens") purchased lots 30, 31 and 32, also from Jean Ellis. The deed from Jean Ellis to the Allens similarly referred to the plat of the Hensley Subdivision to describe the lots.

In 1997, defendant Lloyd Allen had lots 30 and 31 surveyed, which revealed that the "Dodd line" was actually further north than shown on the Hensley Subdivision survey prepared in September 1969. All three of these defendants then arranged for a survey to determine the true location of the "Dodd line." The survey revealed a 1.826 acre tri-angle-shaped tract of land abutting lots 7, 8, 30 and 31, which is the subject of this appeal. Also in 1997, after the existence of this tract of land was brought to the attention of Ben Lee Hensley, he had a survey conducted on the land in question. Plaintiff's surveyor, John Young, agreed with defendants' surveyor regarding the northern boundary of the defendants' lots (the northern boundary of the subdivision) and the true location of the so-called "Dodd line." Both surveys showed the 1.826 acre tract of land between the northern boundary of the sub-division and the "Dodd line." That same year, Ben Lee Hensley and his wife Earlene Hensely conveyed title to the 1.826 acre tract of land to plaintiff Earlene Hensley individually.

In September 1999, the three defendants entered into an agreement whereby they divided among themselves this "newly discovered" tract of land through quitclaim deeds. This document entitled "Agreement Establishing Boundary" was filed in the Yancey County Register of Deeds on 14 September 1999. Upon learning of this agreement, plaintiff filed an action to quiet title to this tract of land.

On 16 October 2001, plaintiff moved for partial summary judgment on the issue of ownership of the 1.826 acre tract of land. After a hearing, the court granted plaintiff's motion, quieting title to her in the disputed land. On 30 April 2002, defendants' motion for a new trial was denied. On 29 May 2002, plaintiff moved for partial summary judgment on her claim that she is the fee simple owner of the roads in the Hensley Subdivision, while defendants moved for partial summary judgment that plaintiff should be equitably estopped from using the roads in the Hensley Subdivision to access the 1.826 acre tract of land. After a hearing on these motions, the court granted partial summary judgment to plaintiff, declaring her the fee simple owner of the roadways in the Hensley Subdivision, but the court also granted partial summary judgment to defendants, ruling that plaintiff is estopped from using the roadways to access her property.

Plaintiff then moved for partial summary judgment on her claim of a reverse implied easement on 16 July 2002. After a hearing, the court denied this motion. Thereafter, on 5 August 2002, plaintiff voluntarily dismissed her remaining claims and on 15 August 2002, filed notice of appeal from the trial court's orders estopping her from using the roadways to access her property and denying her a reverse implied easement. On 19 August 2002, defendants appealed the trial court's order quieting title to the disputed land in plaintiff and to the trial court's denial of their motion for a new trial.

I.

[1] Defendants first argue that the trial court erred in granting partial summary judgment to plaintiff quieting title to the 1.826 acre tract of land. For the following reasons, we disagree.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c).

An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. [T]he party moving for summary judgment has the burden of establishing the lack of any triable issue of fact. Furthermore, the evidence presented by the parties must be viewed in the light most favorable to the non-movant.

*Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. 356, 358, 558 S.E.2d 504, 506 (2002) (internal citations and quotation marks omitted), *disc. review denied*, 356 N.C. 159, 568 S.E.2d 186 (2002).

G.S. § 41-10 provides that "[a]n action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." G.S. § 41-10 (1999). "The purpose of this statute is to free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion." *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997) (quotations and citations omitted), *disc. review denied*, 347 N.C. 574, 498 S.E.2d 380 (1998).

To establish a *prima facie* case for removing a cloud upon title, two requirements must be met: (1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim in the land adverse to plaintiff's title, estate or interest. *Id.* "[O]nce a plaintiff establishes a *prima facie* case for removing a cloud on title, the burden rests upon the defendant to establish that his title to the property defeats the plaintiff's claim." *Id.*

At the summary judgment hearing, plaintiff submitted a connected chain of title to the disputed 1.826 acre tract of land dating back to 1958. In 1997, the 1.826 acre tract was deeded to plaintiff from herself and her husband Ben Lee Hensley. In 1969, the plaintiff and Ben Lee Hensley received by warranty deed an approximately 14 acre tract of land, which included the disputed 1.826 acre tract, from Charlie Fox and Lubriga Fox's guardian. In 1958, Charlie Fox had received title to this same piece of land by warranty deed from Vincent Westall, agent and attorney-in-fact for Louise S. Calvert. In both the 1969 deed from Fox to plaintiffs and the 1958 deed from Westall to Fox, "Dodd's line" was designated as the northern boundary of the property.

In 1997, defendants and plaintiff both hired surveyors to locate the northern boundaries of the lots as well as the "Dodd line," and both surveys revealed the 1.826 acre tract of land located outside the northern border of the Hensley Subdivision between the Hensley Subdivision and the "Dodd line." Subsequent to defendants' survey, the defendants executed the "Agreement Establishing Boundary" in which they quitclaimed to one another the entire 1.826 acre tract to divide it among themselves, thus casting a cloud upon plaintiff's title. Although the Hensleys may have mistakenly believed that they had conveyed away all of the property they owned, plaintiff's evidence clearly showed that she has superior title to the 1.826 acre tract in dispute, and the trial court did not err in entering summary judgment in her favor on this issue.

Based upon the foregoing, we also hold that the trial court did not abuse its discretion in denying defendants' motion for a new trial.

II.

[2] Next, plaintiff argues that the trial court erred by finding that plaintiff is estopped from using the roads in the Hensley Subdivision to access the 1.826 acre tract of land discussed above. For the following reasons we agree and reverse the trial court.

On 19 July 2002, the trial court ruled on partial summary judgment motions filed by both parties that plaintiff is the fee simple owner of the roadways in the Hensley Subdivision, but that she is estopped from using the roadways to access the "newly discovered" 1.826 acre tract of land. Plaintiff then moved for a new trial on the estoppel issue and alternatively for partial summary judgment seeking an easement by necessity to use the roadways to access her property. The trial court denied both motions.

As purchasers of lots in the Hensley Subdivision, whose deeds did not purport to give them any ownership interest in the roads, defendants "acquired no interest in the subdivision streets other than the right to use them in getting to and going from their lots." *Rudisill v. Icenhour*, 92 N.C. App. 741, 743, 35 S.E.2d 682, 684. In *Russell v. Coggin*, our Supreme Court noted that:

> where lots are sold and conveyed by reference to a map or plat which represent a division of a tract of land into subdivisions or streets and lots, such streets become dedicated to the public use, and the purchaser of a lot or lots acquires the right to have all and each of the streets kept open; and it makes no difference whether

the streets be in fact opened or accepted by the governing boards of towns or cities if they lie within municipal corporations. There is a dedication, and if they are not actually opened at the time of sale, they must be at all times free to be opened as occasion may require.

232 N.C. 674, 675-76, 62 S.E.2d 70, 72 (1950) (citations omitted). Our case law often refers to a lot purchaser's right to use the streets as having been dedicated to him by the owner. *Johnson v. Skyline Telephone Membership Corp.*, 89 N.C. App. 132, 134, 365 S.E.2d 164, 165 (1988). However, as this Court noted in *Johnson*,

It does not follow from defendants' right, as purchasers of the lots in the subdivision, to use the streets shown on the recorded plat, that their easement is exclusive or that [the person that recorded the plat] was divested of all interest in the streets. The grantor of an easement retains fee title to the soil, subject to the burdens which the easement imposes. Consequently, the fee holder may use the land or convey additional easements over it so long as the use or conveyance does not interfere with the original easement.

*Id.* at 134, 365 S.E.2d at 165.

The present case is analogous to *Rudisill*, in which a decedent's (Finley Wilson's) will directed his estate to plat and record the Wilson Heights subdivsion, which was done in 1968. *Rudisill*, 92 N.C. App. at 742, 35 S.E.2d at 683. The estate then sold the lots in the subdivision. In 1986, the decedent's heirs, who had fee simple title to the roads in the subdivision, conveyed to defendants an easement to one of the previously unopened streets (Ethel Street) in the subdivision. *Id.* at 743, 35 S.E.2d at 684. The defendants intended to open and use Ethel Street to access their 2.3 acre tract of land situated outside of the subdivision.

The plaintiffs in *Rudisill*, who owned lots that fronted Ethel Street, sued to enjoin defendants from using Ethel Street to access their land. *Id.* The trial court granted plaintiff's motion for summary judgment thereby permanently enjoining defendants from using Ethel Street for access to and from their land. This Court vacated the trial court's order, holding that the fee simple owners of the streets in the Wilson Heights subdivision could convey to a third party an easement to use a platted, but previously unopened, street in the subdivision to access land lying outside the subdivision. This Court concluded by stating that:

Since plaintiffs' only legal right in regard to Ethel Street is to use it as a *street* and to have such use not interfered with, their action to prevent the street from being opened and used as a street has no legal basis and should have been dismissed by summary judgment pursuant to defendants' motion.

*Id.* at 743-44, 375 S.E.2d at 684 (citations omitted).

Like the plaintiffs' suit in *Rudisill*, defendants here base their estoppel defense upon the argument that the plat did not show the road extending beyond the boundary of the Hensley Subdivision. As *Rudisill* makes clear, those who purchase lots in a subdivision by reference to a plat without receiving any ownership interest in the roads have only an expectation that the roads will be kept open as streets, and that the fee simple owner of the roads may use them to access property lying outside the subdivision, so long as such use does not interfere with the lot owners' use of their easement. Defendants argue that to allow plaintiff to now use this road would cause an increase in traffic and noise and diminish the value of their lots. However, in accord with *Rudisill*, *Johnson* and other authorities, defendants must show that plaintiff's use of the roads to access her property outside the Hensley Subdivision would somehow interfere with their easement (their use of the roads). We see no evidence that defendants made such a showing, and the trial court made no such finding. Thus, as in *Rudisill*, defendants' action to prevent plaintiff from using the road to access her property has no legal basis and summary judgment for plaintiff should have been granted.

## Conclusion

For the foregoing reasons, we affirm the trial court's grant of summary judgment on the issue of title to the 1.826 acre tract of land, reverse the trial court's grant of partial summary judgment estopping plaintiff from using the roadways in the Hensley Subdivision to access such land, and remand to the trial court for entry of judgment in plaintiff's favor on defendants' affirmative defense of estoppel.

Affirmed in part, reversed in part, and remanded.

Judges WYNN and CALABRIA concur.