SUZANNE HILL, FORD GOUDEY, MARY SUSAN SCHMIDT, C.H. BALLOU, DORA DEAN BALLOU, A.C. BLANKENSHIP STEVE A. BROCK, JEAN BURROWS, CAROLYN B. BYRD, D.S. BYRD, JOSEPH CANOSA, J.L. CASTLEBERRY, MARGIE R. CASTLEBERRY, ALBERT CHAPPELL, JEAN CHAPPELL, LEWIS CLARKE, BRENDA DAVIS, J. CHRIS DAVIS, JOSEPHINE DAVIS, JIM FRENCH, ANNE B. GILLIAM, JAMES GILLIAM, ANN J. GOLD, W.A. GOLD, EMILY GRAHAM, LUKE GRUBER, PRICE TAYLOR HARRISON, L.B. HASKINS, JAMES M. HAYWARD, VIRGINIA C. HAYWARD, L. JARVIS HERRING, SALLY HERRING, CLARA INSCOE, RALPH JOHNSON, CLINTON LEWIS, BARBARA D. MARTIN, JESSICA L. MARTIN, JOSEPH McCLURE, JANIL MILLER, JOHN MILLER, GENE W. MORRISON, HERBERT PARKIN, BARBARA PAERL, MICHELLE S. PITTMAN, GILBERT M. POTTER, PAT I. POTTER, JOAN H. PULLEY, W. PAUL PULLEY, JR., ARTHUR RITTMASTER, KEITH RITTMASTER, CAROLYN ROGERS, ROBERT F. ROSER, DENISE ROSER, LENA RUDDER, HAZEL SIMPSON, KERRY SINCLAIR, C.W. STAMPER, DAWN STEWART, MACK STYRON, VICKY THAYER, DEBORAH BOYCE TODD, EDWIN LEE TODD, GWENDOLYN TOWLES, THELMA P. WARD, JAMES R. WHEATLEY, MACK WILLIS, EDITH YORK, LAWRENCE B. WILSON, JR., ELIZABETH B. WILSON, PLAINTIFFS-APPELLANTS v. MICHAEL TAYLOR, DEFENDANT-APPELLEE

No. COA04-1698

(Filed 15 November 2005)

## 1. Real Property— landing—Marketable Title Act—possession exception

The trial court erred in an action to quiet title and for a declaratory judgment regarding the ownership of a landing by granting defendant's motion for a directed verdict as to plaintiffs Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring, and Suzanne Hill, but did not err by granting defendant's motion for directed verdict as to Gene W. Morrison, because: (1) plaintiffs established prima facie ownership of an easement in the landing pursuant to *Realty Co. v. Hobbs*, 261 N.C. 414 (1964), and the Marketable Title Act; (2) the possession exception did not operate to preclude

plaintiffs from relying on the Marketable Title Act to establish prima facie ownership; (3) defendant's possession only protected whatever interest defendant owned at the commencement of the action, which was the date the marketability of plaintiffs' title was determined; (4) it was within the province of the jury to determine whether plaintiffs owned interests in the landing and, if so, whether defendant owned an interest which defeated plaintiffs' interests; and (5) Gene W. Morrison did not offer a thirty-year connected chain of title under the Marketable Title Act and failed to demonstrate prima facie ownership of an easement in the landing.

**2. Real Property— landing—burden of proof—prima facie record title—on-the-ground location of landing**

The trial court erred in an action to quiet title and for a declaratory judgment regarding the ownership of a landing by granting defendant a directed verdict at the close of all evidence on the ground that plaintiffs failed to locate the description of the landing contained in their chains of title on the earth's surface, because: (1) if there is any competent evidence locating a tract of land on the ground, the issue of location becomes a jury question and a directed verdict is not proper; and (2) plaintiffs presented sufficient competent evidence establishing the on-the-ground location of the landing.

Appeal by plaintiffs from judgment entered 14 May 2004 by Judge Kenneth F. Crow in Superior Court, Carteret County. Heard in the Court of Appeals 24 August 2005.

*Kirkman Whitford & Brady, P.A., by Neil B. Whitford, for plaintiffs-appellants.*

*Wheatly, Wheatly, Nobles, Weeks, Valentine and Lupton, P.A., by C.R. Wheatly, Jr. and C.R. Wheatly, III, for defendant-appellee.*

McGEE, Judge.

Plaintiffs claim an interest in a tract of real property in Carteret County depicted as Lot 1 Block 6, bearing the legend "Landing for Lot owners" (the landing), on a plat captioned "Map Showing Property of Beaufort Houseing [sic] Corporation" (the plat). The plat was recorded in Map Book 1, Page 226, Carteret County Registry on 26 February 1945. The plat lays out various lots and streets in a subdivision, including the landing.

**HILL v. TAYLOR**

[174 N.C. App. 415 (2005)]

Beaufort Housing Corporation conveyed various lots, including lots currently owned by several plaintiffs, and referenced the plat in the conveyances. From the 1940's to the present time, there generally has been a dock or pier extending from the landing into the waters of Taylor's Creek. Since the 1940's, owners of property within the subdivision, including several plaintiffs and their predecessors in interest, have used the landing and various piers located thereon for access to Taylor's Creek.

Defendant recorded a deed dated 16 July 1993 which purported to convey to defendant the same real property as that encompassed in the landing. In 1997 or 1998, defendant constructed a new pier extending from the landing. A year or so later, defendant constructed a gate on the pier and marked the gate with a "private dock" sign.

Plaintiffs filed this action on 14 July 2000 by securing an order extending the time to file their complaint. Plaintiffs filed a complaint to quiet title and for declaratory judgment on 2 August 2000 and an amended complaint on 1 September 2000. Lawrence B. Wilson, Jr. and Elizabeth B. Wilson were plaintiffs in a parallel case, 2000-CVS-000786. By stipulation and order filed 26 April 2004, 2000-CVS-000786 was dismissed and consolidated with the present case, and Lawrence B. Wilson, Jr. and Elizabeth B. Wilson were added as plaintiffs in this case.

Plaintiffs alleged in their complaint that they

(a) [were] the owners of the lot identified[] as "Landing for lot owners," on the plat recorded in Book 1, page 226, Carteret County Registry, and they, or their predecessors in title [had] been owners of said plat since the recording of said plat [in] February, 1945; or,

(b) in the alternative [held] an easement to and right to use the lot identified[] as "Landing for lot owners," on the plat recorded in Book 1, page 226, Carteret County Registry, and they, or their predecessors in title, [had] been owners of said plat since the recording of said plat [in] February, 1945.

Plaintiffs also alleged that defendant claimed an estate or interest in real property adverse to plaintiffs and that defendant was obstructing plaintiffs in their use of the landing. Defendant answered and counterclaimed, alleging that he was the owner in fee simple of the real property described by plaintiffs as the landing.

At trial, plaintiffs introduced into evidence a deed dated 26 April 1945 from B.B. Montague and Myra Montague to Beaufort Housing Corporation, which purportedly transferred ownership of the landing to Beaufort Housing Corporation. Therefore, plaintiffs asserted Beaufort Housing Corporation owned the landing when it conveyed lots to plaintiffs' predecessors in interest.

Elizabeth B. Wilson's chain of title dated back to a 20 July 1946 deed from Beaufort Housing Corporation. This deed purported to convey "all of lot 6 in Block 5 as shown on the plat entitled 'Beaufort [Housing] Corporation[,]' same having been prepared in February 1945, and recorded in Plat Book 1, page 226, of the Carteret County Public Registry."

L. Jarvis Herring and Sally Herring traced their title back to a 19 April 1946 deed from Beaufort Housing Corporation. This deed purported to convey "[a]ll of Lot #3, Block 4, as shown on the plat entitled 'Property of Beaufort [Housing] Corporation[,]' same having been prepared in February 1945, and recorded in Book 1, Page 226, Carteret County Public Registry."

Suzanne Hill traced her chain of title back to a deed from Beaufort Housing Corporation dated 7 February 1946. This deed purported to convey "all of lot #26, Block 5, as shown on the plat entitled 'Property of Beaufort [Housing] Corporation[,]' same having been prepared in February 1945, and recorded in Plat Book 1, Page 226, Carteret County Public Registry."

Plaintiffs introduced a deed from Louis Dorme and Ruby B. Dorme to Gene W. Morrison and V. Lorrayne Morrison, dated 20 January 1972. This deed purported to convey title to "Lot Number Three (3), in Block Six (6), according to that plan entitled 'Beaufort [Housing] Corporation,' same being prepared in February, 1945, and recorded in Map Book 1, at page 226, Carteret County Registry."

At the conclusion of plaintiffs' evidence, defendant moved for a directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 50 (2003). The trial court granted defendant's motion as to all plaintiffs except Lawrence B. Wilson, Jr., Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring and Suzanne Hill (remaining plaintiffs). In support of its ruling, the trial court determined that the North Carolina Real Property Marketable Title Act (Marketable Title Act) did not apply because of the exception to the Marketable Title Act at N.C. Gen. Stat. § 47B-3(3) (the possession exception).

**HILL v. TAYLOR**

[174 N.C. App. 415 (2005)]

Defendant presented his evidence as to remaining plaintiffs. Defendant's evidence was followed by a rebuttal from remaining plaintiffs. At the conclusion of all the evidence, defendant renewed his Rule 50 motion for a directed verdict. The trial court granted defendant's motion as to remaining plaintiffs. The trial court orally stated the bases for its ruling. First, the trial court reiterated its ruling that the Marketable Title Act did not apply by virtue of the possession exception and directed a verdict for defendant on that ground. Second, the trial court also directed a verdict for defendant on the basis that remaining plaintiffs never established the on-the-ground location of the landing in accordance with *Day v. Godwin*, 258 N.C. 465, 128 S.E.2d 814 (1963).

Lawrence B. Wilson, Jr. dismissed his appeal on 22 November 2004. Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring, Suzanne Hill and Gene W. Morrison (hereinafter plaintiffs) appeal.

On appeal, plaintiffs assign error to the trial court's grant of defendant's motion for directed verdict as to Gene W. Morrison at the close of plaintiffs' evidence. Plaintiffs also assign error to the trial court's grant of defendant's motion for directed verdict as to Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring, and Suzanne Hill at the close of all the evidence.

When ruling on a motion for a directed verdict, a trial court must "consider the evidence in the light most favorable to the non-movant, and determine whether the evidence is sufficient as a matter of law to be submitted to the jury." *Town of Highlands v. Edwards*, 144 N.C. App. 363, 366, 548 S.E.2d 764, 766, *disc. review denied*, 354 N.C. 74, 553 S.E.2d 212 (2001). The non-movant "is entitled to the benefit of every reasonable inference which may be legitimately drawn from the evidence, and all evidentiary conflicts must be resolved in favor of the nonmoving party." *Merrick v. Peterson*, 143 N.C. App. 656, 661, 548 S.E.2d 171, 175, *disc. review denied*, 354 N.C. 364, 556 S.E.2d 572 (2001). The trial court should deny the motion "if there is more than a scintilla of evidence supporting each element of the nonmovant's case." *Freese v. Smith*, 110 N.C. App. 28, 33-34, 428 S.E.2d 841, 845 (1993). "Under this standard, this Court must determine whether [the] plaintiff's evidence, when considered in the light most favorable to [the] plaintiff, was legally sufficient to withstand [the] defendants' motion for a directed verdict as to [the] plaintiff's claims." *Merrick*, 143 N.C. App. at 661, 548 S.E.2d at 175.

Pursuant to N.C. Gen. Stat. § 41-10 (2003), "[a]n action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" In order to establish a *prima facie* case for removing a cloud on title, two requirements must be satisfied: "(1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim in the land adverse to [the] plaintiff's title, estate or interest." *Hensley v. Samel*, 163 N.C. App. 303, 307, 593 S.E.2d 411, 414 (2004) (citing *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997), *disc. review denied*, 347 N.C. 574, 498 S.E.2d 380 (1998)). " '[O]nce a plaintiff establishes a *prima facie* case for removing a cloud on title, the burden rests upon the defendant to establish that his title to the property defeats the plaintiff's claim.' " *Id.* (quoting *Wetherington*, 127 N.C. App. at 461, 490 S.E.2d at 597).

I.

**[1]** Plaintiffs argue the trial court erred in ruling that plaintiffs could not rely on the Marketable Title Act to prove their *prima facie* interests in the landing and in granting defendant's motions for directed verdict on that ground. The trial court ruled that plaintiffs could not use the Marketable Title Act to prove their interests because defendant was and had been in possession of the real property at the time the suit was filed. However, the trial court erroneously applied the possession exception to the Marketable Title Act.

The purpose of the Marketable Title Act is to facilitate the alienability and marketability of real property. N.C. Gen. Stat. § 47B-1(1) (2003). The Marketable Title Act accomplishes this goal by allowing the establishment of marketable title upon a showing of a thirty-year chain of title to real property, "with nothing appearing of record . . . purporting to divest such claimant of the estate claimed." N.C. Gen. Stat. § 47B-2(b) (2003). This showing of marketable title is "prima facie evidence that such person owns title to the real property described in his record chain of title." N.C. Gen. Stat. § 47B-2(d) (2003).

Once such a claimant establishes marketable title, the Marketable Title Act operates to extinguish "all rights, estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to such 30-year period[,]" except those listed in N.C. Gen. Stat. § 47B-3. N.C. Gen. Stat. § 47B-2(c) (2003). The possession exception under N.C. Gen. Stat. § 47B-3(3) is one such exception.

Under that exception, "[s]uch marketable record title shall not affect or extinguish the following rights: . . . (3) Rights, estates, interests, claims or charges of any person who is in present, actual and open possession of the real property so long as such person is in such possession." N.C. Gen. Stat. § 47B-3(3) (2003).

Our Supreme Court interpreted the possession exception to the Marketable Title Act in *Heath v. Turner*, 309 N.C. 483, 308 S.E.2d 244 (1983). In *Heath*, the plaintiffs and the defendants established competing marketable titles to various interests in the lots in controversy. *Id.* at 491-92, 308 S.E.2d at 249. However, the defendants were in possession of the lots at the time the plaintiffs filed their action to quiet title. *Id.* at 493, 308 S.E.2d at 250. The defendants argued that they were "entitled to all of the interests" in the lots. *Id.* at 491, 308 S.E.2d at 248. The Court held that

> the fact that the defendants were in possession of the lands in question serves as a defense against a competing marketable record title but does not, under the Marketable Title Act, establish title in the defendants. Stated differently, whatever rights the defendants have because they are in possession of the property are not taken away by a competing marketable record title but the mere fact of possession by the defendants does not alone establish their ownership of the land. It (possession) only protects whatever ownership the defendants already have on the date that marketability is to be determined.

*Id.* at 493, 308 S.E.2d at 249-50.

In *Heath*, at the time the plaintiffs filed their action, the defendants were in possession of the lots in controversy and had acquired title to an 8/11 undivided interest in the lots by adverse possession. *Id.* at 493, 308 S.E.2d at 250. Therefore, "even if the plaintiffs had a marketable record title on that date under the Real Property Marketable Title Act, it could not affect or extinguish the defendants' title previously acquired by adverse possession because that title is an interest protected by G.S. § 47B-3(3)." *Id.* However, the defendants' possession "[did] not give them any title which they did not already have." *Id.* at 494, 308 S.E.2d at 250. The plaintiffs retained title to a 3/11 undivided interest despite the defendants' possession. *Id.* at 497, 308 S.E.2d at 252.

As illustrated by *Heath*, the possession exception does not operate automatically to defeat a thirty-year marketable record title. The

Court held that possession "only protect[ed] whatever ownership the defendants already [had] on the date that marketability [was] . . . determined." *Id.* at 493, 308 S.E.2d at 249-50. A possessor of real property has a burden to establish the possessor's rights in the property in controversy because mere possession "does not . . . establish title[.]" *Id.* at 493, 308 S.E.2d at 249. The possession exception will only operate to defeat a competing marketable title if the possessor carries the burden of showing the possessor owns the real property.

It is well settled that a lot owner who purchases real property in reliance on a plat depicting certain amenities obtains an interest in those amenities. Our Supreme Court has held that

> [w]here lots are sold and conveyed by reference to a map or plat which represents a division of a tract of land into streets, lots, parks and playgrounds, a purchaser of a lot or lots acquires the right to have the streets, parks and playgrounds kept open for his reasonable use, and this right is not subject to revocation except by agreement.

*Realty Co. v. Hobbs*, 261 N.C. 414, 421, 135 S.E.2d 30, 35-36 (1964) (citing *Steadman v. Pinetops*, 251 N.C. 509, 112 S.E.2d 102 (1960) and *Conrad v. Land Co.*, 126 N.C. 776, 36 S.E. 282 (1900)). The Court further stated,

> It is said that such streets, parks and playgrounds are dedicated to the use of lot owners in the development. In a strict sense it is not a dedication, for a dedication must be made to the public and not to a part of the public. It is a right in the nature of an easement appurtenant.

*Hobbs*, 261 N.C. at 421, 135 S.E.2d at 36 (internal citation omitted).

In the present case, Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring and Suzanne Hill introduced exhibits to establish their respective chains of title of more than thirty years from Beaufort Housing Corporation. Each of their chains of title contained a deed from Beaufort Housing Corporation which referenced the plat entitled, "Property of Beaufort [Housing] Corporation." The plat depicted Lot 1 Block 6 of the subdivision as a "Landing for Lot owners." *See Barton v. White*, 173 N.C. App. 717, 721, 620 S.E.2d 278, 281 (2005) (noting that express words on a recorded plat can raise a justiciable issue as to a grantor's intent to create an easement appurtenant). Plaintiffs also introduced a deed purporting to show that Beaufort Housing Corporation owned the real property designated as

**HILL v. TAYLOR**

[174 N.C. App. 415 (2005)]

the landing when it conveyed lots to plaintiffs' predecessors in interest. Therefore, plaintiffs established *prima facie* ownership of an easement in the landing pursuant to *Hobbs* and the Marketable Title Act. The burden shifted to defendant to establish that his title to the property defeated plaintiffs' claims. *Hensley,* 163 N.C. App. at 307, 593 S.E.2d at 414.

The possession exception did not operate to preclude plaintiffs from relying on the Marketable Title Act to establish *prima facie* ownership. Defendant's possession only protected whatever interest defendant owned at the commencement of the action, which was the date the marketability of plaintiffs' title was determined. *See Heath,* 309 N.C. at 493, 308 S.E.2d at 250 (noting that marketability is determined as of the date the action was commenced). It was within the province of the jury to determine whether plaintiffs owned interests in the landing, and if so, whether defendant owned an interest which defeated plaintiffs' interests. Therefore, the trial court erred by granting defendant's motion for directed verdict as to Elizabeth B. Wilson, L. Jarvis Herring, Sally Herring, and Suzanne Hill at the close of all the evidence.

Gene W. Morrison, however, offered only one deed, dated 20 January 1972, into evidence to establish his title. Plaintiffs commenced their action on 14 July 2000, which is the date that marketability was determined. Therefore, Gene W. Morrison did not offer a thirty-year connected chain of title under the Marketable Title Act and failed to demonstrate *prima facie* ownership of an easement in the landing. Accordingly, the trial court properly granted defendant's motion for directed verdict as to Gene W. Morrison.

## II.

[2] Plaintiffs also argue the trial court erroneously granted defendant a directed verdict at the close of all the evidence on the ground that plaintiffs failed to locate the description of the landing contained in their chains of title on the earth's surface. In addition to plaintiffs' burden of showing *prima facie* record title to the landing, plaintiffs also had the burden of establishing the on-the-ground location of the landing. *Chappell v. Donnelly,* 113 N.C. App. 626, 629, 439 S.E.2d 802, 805 (1994). Where a plaintiff relies on deeds as proof of title, a plaintiff must " 'locate the land by fitting the description in the deeds to the earth's surface.' " *Id.* (quoting *Andrews v. Bruton,* 242 N.C. 93, 96, 86 S.E.2d 786, 788 (1955)).

In *Batson v. Bell*, 249 N.C. 718, 719, 107 S.E.2d 562, 563 (1959), our Supreme Court noted:

> The rules applicable to the ascertainment of boundaries trace back to the early history of the State. They are firmly established by numerous consistent decisions.
>
> What are the boundaries is a matter of law to be determined by the [trial] court from the description set out in the conveyance. Where those boundaries may be located on the ground is a factual question to be resolved by the jury.

In *Paper Company v. Jacobs*, 258 N.C. 439, 442, 128 S.E.2d 818, 820 (1963), our Supreme Court held that if there is any competent evidence locating a tract of land on the ground, the issue of location becomes a jury question and a directed verdict is not proper. In the present case, plaintiffs presented sufficient competent evidence establishing the on-the-ground location of the landing. Therefore, the trial court erred by directing a verdict for defendant on that basis at the close of all the evidence.

In *Poe v. Bryan*, 12 N.C. App. 462, 183 S.E.2d 790 (1971), our Court held that the plaintiffs offered sufficient evidence to locate the description of the disputed property on the ground. *Id.* at 468, 183 S.E.2d at 794. In *Poe*, one of the plaintiffs testified that she had been familiar with the boundaries of the tract of land since she was a child. *Id.* at 466, 183 S.E.2d at 792. She testified that she knew where the lines and boundaries were located and testified about their location. *Id.* at 466, 183 S.E.2d at 792-93. Our Court held that "the testimony of the feme plaintiff and the [trial] court appointed surveyor constitutes sufficient evidence that the description of the . . . deed fits the land and embraces the land in controversy." *Id.* at 467, 183 S.E.2d at 793.

Likewise, in the present case, plaintiffs presented abundant testimony from plaintiffs themselves and from other witnesses who were familiar with the location of the landing. Ronald Quidley, an owner of property in the subdivision, testified that he had been familiar with the landing since he was a child. He testified that the landing was located at the south end of Seaview Street and served as the subdivision swimming area. Gene W. Morrison testified that he lived one lot removed from the landing and that he mowed the grass on the landing for about ten years. Sally Herring testified that she had lived on Front Street, a few lots away from the landing, since 1947. She further testified that the landing on Front Street served as the subdivision

swimming area. Suzanne Hill also testified that she was familiar with the landing. She testified there was a dock on the landing when she moved to the subdivision in 1968 and that the children in the subdivision used the lot to fish and swim in Taylor's Creek. Plaintiffs offered this evidence to establish that the landing was bounded on the north by Front Street, on the south by Taylor's Creek and on the east and west by the extension of the boundaries of Seaview Street toward Taylor's Creek.

The present case is also analogous to *Jacobs*. In *Jacobs*, the plaintiff, as in this case, had the burden of showing the on-the-ground location of the claimed real property. *Jacobs*, 258 N.C. at 441, 128 S.E.2d at 820. However, in *Jacobs* the plaintiff "offered no witness who testified to having surveyed the boundaries set out in the several deeds under which [the plaintiff's predecessor in interest] claimed. It did not attempt to establish any of the corners called for in those instruments. The surveyor testified he merely plotted the lines on his map." *Id.* at 442, 128 S.E.2d at 820. Nonetheless, the question of the on-the-ground location of the real property was properly left to the jury. *Id.* at 444, 128 S.E.2d at 822.

In the present case, plaintiffs presented the testimony of James W. Thompson (Mr. Thompson), an attorney specializing in real property law. Mr. Thompson testified that plaintiffs' exhibit number six was a deed which conveyed the landing to Beaufort Housing Corporation. Mr. Thompson plotted the landing on the plat by indicating where the landing was located on the plat.

Defendant later presented the testimony of James L. Powell (Mr. Powell), a professional land surveyor. Mr. Powell testified that in 1993 he surveyed the real property defendant claimed to own. On cross-examination, Mr. Powell testified that the area he surveyed completely encompassed the landing, described as Lot 1 on Page 226 of Map Book 1 in the Carteret County Registry. The testimony of Mr. Powell, defendant's own surveyor, clearly showed that the landing, Lot 1, was located on the earth's surface at the south end of Seaview Street.

In *Day*, our Supreme Court held that the plaintiff failed to locate the disputed real property on the ground. *Day*, 258 N.C. at 470-71, 128 S.E.2d at 818. The Court held that a plaintiff cannot meet its burden on this issue by merely superimposing a plat of the property onto an aerial photograph. *Id.* at 470, 128 S.E.2d at 818. The Court reasoned that because the plaintiff lacked personal knowledge about the loca-

tion of the disputed boundaries and because the plaintiff did not conduct a survey of the real property, the plaintiff failed to locate the real property on the ground. *Id.* at 470, 128 S.E.2d at 817-18.

In the present case, plaintiffs presented the testimony of Loie Priddy (Mr. Priddy), the Chief of the Coastal Survey Unit for the Unit Survey Section of the North Carolina Department of Natural Resources. Mr. Priddy testified that he superimposed the plat onto an aerial photograph of the region encompassing the landing. However, plaintiffs did not rely solely on the testimony of Mr. Priddy. As a result of the additional testimony reviewed above, the issue of where the landing was located upon the earth's surface was an issue for the jury. Accordingly, the trial court erred by directing a verdict for defendant on this basis.

Affirmed in part; reversed and remanded in part.

Judges McCULLOUGH and JACKSON concur.