LUCIELLE TEAL TICE v. ALBERT WINCHESTER et ux.

(Filed 12 December, 1945.)

**1. Boundaries §§ 1, 3a, 4: Deeds § 12—**

All the descriptive matter set out in a deed, where pertinent, is to be considered in the attempt to identify the land to be conveyed, both in its content and extent; but we must observe other more specific rules, respecting the comparative weight and value of the descriptive elements in the conveyance—natural objects, artificial monuments, fixed corners, course, distance, quantity.

**2. Boundaries § 3a: Deeds § 12—**

When the beginning point, in the description of land in a conveyance, has been established, it cannot be shifted backwards and forwards in the line by any call for course or distance; but the actual distance between it and the next corner shall be taken, regardless of whether the distance called for is over or short of that point.

**3. Boundaries §§ 3a, 4—**

An artificial monument, such as a stake, usually is not considered as of so much dignity and certainty as a reference to natural objects or to objects more or less permanent in their nature, such as permanent structures on land.

APPEAL by plaintiff from *Sink, J.,* at May Term, 1945, of UNION.

This appeal is from a judgment rendered in a special proceeding under G. S., 38-1, *et seq.,* to determine a disputed boundary between the properties of the parties.

The respective lots of the parties are adjoining portions of a lot formerly owned by H. B. Allen, the defendants having acquired title to their lot first in order. In the deed to defendants, Allen described the beginning corner as follows:

"Beginning at an iron stake in the East edge of the East sidewalk on Sanford Street, a new corner, said point being equidistant between the dwelling located on the lot here being described and the dwelling located on the next adjoining the same," and the closing line as follows: "thence a new division line being equidistant between the dwelling located on the lot being described and the dwelling located nearest the same on H. B. Allen's adjoining lot S. 86 W. 130 feet to the beginning point."

In plaintiff's deed the beginning corner is described as follows: "Beginning at an iron stake in the East edge of the East sidewalk on Sanford Street, said point being the northwest corner of Albert Winchester's lot purchased from H. B. Allen by deed dated June 23, 1943, and recorded in Book 97, at page 99, Union County Registry, and running thence with said Winchester's lot line N. 86 E. 130 feet to an iron stake, said point being Albert Winchester's new corner in the old line." (R., pp. 2 and 3.)

The defendants' deed calls for a distance along the east sidewalk of Sanford Street 83⅓ feet to a point in the edge of the sidewalk and in the north edge of Alley "M."

Under order of the clerk, a survey was made by the county surveyor, who filed his report, accompanied by a plat of the survey, both of which form a part of the record in this case.

The plat is here reproduced.

A-B = line equidistant between houses.

C-D = frontage distance of lots.

E-F = line equidistant between northern
and southern extremity of houses.

MAP OF PROPERTY
owned by
LUCIELLE TEAL TICE, Petitioner
and ALBERT WINCHESTER and Wife, Defendants
Monroe, Union County, N. C.
Surveyed April 3, 1945.　　Scale: 1" = 30 ft.
by RALPH W. ELLIOTT, C. S.

The surveyor's report is as follows:

"To HONORABLE J. E. GRIFFIN, CLERK
OF SUPERIOR COURT OF UNION COUNTY:

"The undersigned, appointed in an Order in this cause dated 20th day
of March, 1945, has made a survey of the lots belonging to the plaintiff

and the defendants herein and attaches hereto a plat thereof. The line, A to B, has been run equidistant between the houses of the plaintiff and the defendants as called for in the deeds; the red line shown on the plat (C to D) represents the line dividing the properties according to frontage distance and is according to the contention of the defendants as I understand it.

"Respectfully submitted this the 11th day of April, 1945.

RALPH W. ELLIOTT,
County Surveyor."

Upon the hearing before the clerk, judgment was rendered finding the line E to F on the accompanying plat to be the true dividing line between the respective lots of plaintiff and defendants.

Both plaintiff and the defendants appealed to the Superior Court, where it was heard before Judge Hoyle Sink, by consent of parties, without a jury. After considering the pleadings, deeds, and plat of Surveyor Elliott, the court found and held the line represented as C to D on the plat to be the correct dividing line between the parties. From this judgment plaintiff appealed.

*Milliken & Richardson for plaintiff, appellant.*
*Coble Funderburk for defendants, appellees.*

SEAWELL, J. In determining the line C to D to be a correct dividing line between the lots of the plaintiff and the defendants, Judge Sink made no formal findings of fact. This was hardly necessary since the conclusion was based upon descriptions in the deeds and the plat in evidence, together with the explanatory report of the surveyor relating to the manner in which the survey was made. The only thing we might consider outside of these data is whether the iron stake mentioned in connection with the beginning corner is still there, or ever was there. No such monument appears on the court map in evidence; and we may, therefore, assume that it was not there, whatever inference might otherwise have been drawn from its presence if it had been. With the evidence before us upon which he acted, it becomes clear that Judge Sink undertook to find the proper location of the beginning corner of defendants' deed and of the disputed line by the application of legal principles to the evidence before him, none of which we find disputed. The matter is determinable, therefore, on review of the legal questions involved.

The gist of the controversy is the establishment of the beginning corner of defendants' deed (which is also the beginning corner of plaintiff's deed) described as "equidistant between the dwelling located on the lot here being described and the dwelling located on the lot next adjoining

the same." The call from that point is "running thence with the east line of said sidewalk S. 4 E. 83⅓ feet to a point in the east edge of said sidewalk, and in the north edge of Alley 'M.' " The second call is "North with the edge of Alley 'M' N. 86 E. 130 feet to an iron stake in the north edge of Alley 'M,' Mrs. Josephine Aldridge's corner." The third call is "with the line of said Aldridge and Mrs. McGill N. 4 W. 83⅓ feet to an iron stake, a new corner"; and the fourth call "thence a new division line, being equidistant between the dwelling located on the lot being described and the dwelling located nearest the same on H. B. Allen's adjoining lot, S. 86 W. 130 feet to the beginning point." The location of the two corners on Alley "M" is not questioned.

The appellees contend that the location of the beginning point in the deeds is not physically ascertainable from the reference data given by grantor, as "equidistant" between the houses mentioned, because of the difference in construction, their relative location on the lots, and the want of parallelism between them. They contend, therefore, that the description is ambiguous, both as to the beginning corner and the dividing line which might be determined by its location. In this situation, they contend that the proper way to determine the beginning corner is to take the first definitely described corner—that is, the intersection of the east edge of Sanford Street sidewalk with the north edge of Alley "M"—and survey backwards 83⅓ feet—reversing the call and being governed by its stated distance.

Appellant contends that the beginning corner is fixed as a mathematical point and can be ascertained as such in accordance with the intention of the grantor by application of ordinary principles of surveying by reference to the buildings mentioned; and that when so ascertained, it is controlling over descriptions of less certainty and dignity, and specifically over the distance called for between this fixed point and the intersection of the west line with the north line of Alley "M."

As suggested by appellees, it is true that all the descriptive matter set out in a deed, where pertinent, is to be considered in the attempt to identify the land intended to be conveyed, both in its content and extent; *Buckner v. Anderson,* 111 N. C., 572, 16 S. E., 424; *Lee v. Barefoot,* 196 N. C., 107, 144 S. E., 547; *Penny v. Battle,* 191 N. C., 220, 131 S. E., 627; *Bissette v. Strickland,* 191 N. C., 260, 131 S. E., 655. But to avoid a mere impressionistic conclusion, we must observe other more particular and specific rules recognized in law respecting the comparative weight and value and controlling influence of the descriptive elements ordinarily found in conveyances of land—natural objects, artificial monuments, fixed corners, course, distance, quantity.

In the order here given these elements of description in a deed are usually considered as controlling over those which experience has shown

to afford less certainty: calls for a natural object or a point in itself unambiguous, course, distance, quantity. *Miller v. Cherry,* 56 N. C., 24. In the case at bar, the propriety of reversing the call to the intersection of the sidewalk along Sanford Street and the north edge of Alley "M" and measuring backward the full distance of the call to find the beginning corner depends upon whether or not the beginning can be otherwise fixed in accordance with the intention of the grantor as "equidistant" between the houses mentioned in the deeds, so as to run a dividing line of that character between them. When such beginning point has been established, it cannot be shifted backward or forward in the line by any call for course or distance; but the actual distance between it and the next corner shall be taken regardless of whether the distance called for is over or short of that point. *Cowles v. Reavis,* 109 N. C., 417, 422, 13 S. E., 930; *Lee v. Barefoot, supra.* We are not prepared to concede that such a point is not ascertainable by the application of the ordinary rules of surveying, and by reference to the permanent objects—the two houses between which the grantor desired the dividing line to run equidistantly, and which he gave as reference. It is true that neither of them is in the direct line with the "beginning" point and the next corner, and one of them is located nearer Sanford Street than the other, and the houses present different ground plans, and are not strictly parallel; and yet it is possible to run a line satisfying the mathematical conditions between the two houses at the point of their nearest approach, having regard to the course of the line and its projection either way, and this seems to be the method adopted by the surveyor, as is seen by reference to the plat and to his report.

An artificial monument, such as a stake, usually is not considered as of as much dignity and certainty as a reference to natural objects or to objects of more or less permanence in their nature, such as permanent structures upon the land. At any rate, as we have said, there is no evidence here that any iron stake is now present in the line, and the only evidence that it ever was present is the recital in the deed; and if we wish to determine its original location, the reference to the more permanent monuments referred to in the deed would, under the authorities mentioned, control over course and distance. 8 Am. Jur., "Boundaries," ss. 61, 62.

The finding of fact and judgment of the court below were not supported by the evidence, and the cause is remanded for further proceedings in accordance with this opinion.

Error and remanded.