Poe v. Bryan

---

FLORA McDOWELL POE AND HUSBAND, BRENT POE v. DANNY G. BRYAN, JUNE BURNEY AND JERRY BURNEY

No. 7113DC644

(Filed 20 October 1971)

1. **Trespass to Try Title § 4— fitting deed to the disputed land — sufficiency of plaintiffs' evidence**

    In a trespass to try title action, plaintiffs husband and wife offered sufficient evidence to support a jury finding that the disputed tract of land was embraced within the description of the deed on which they relied, where (1) feme plaintiff testified that she had been familiar with the boundaries of the tract since 1916; (2) the feme plaintiff also testified in detail, without objection, as to the location of the lines and boundaries of the tract; and (3) the court surveyor testified that the land described in the plaintiffs' deed was the same tract as the plaintiffs' contended tract.

2. **Boundaries § 10; Trespass to Try Title § 4— deed reference to road as boundary line — sufficiency of plaintiffs' evidence**

    Although the defendants in a trespass to try title action offered substantial and persuasive evidence that a highway relied upon by plaintiffs as a boundary line was not actually constructed until after the delivery and execution of the plaintiffs' deed, which referred to the boundary in question as the "public road," the plaintiffs' own evidence, which was offered without objection, was nonetheless sufficient to support a jury finding that at the time the deed was executed a "public road" existed at the exact place where the highway now stands and that it was this "public road" to which the deed referred.

3. **Adverse Possession § 25—— adverse possession of wooded tract of land ——
sufficiency of evidence**

> Plaintiffs, in a trespass to try title action instituted in 1971, of-
> fered sufficient evidence to establish their ownership of a wooded tract
> of land by adverse possession, where they offered evidence that (1)
> since 1916 they or their predecessor in title maintained a drain ditch
> across the tract and cleaned the ditch each year; (2) a predecessor in
> title obtained logs from the tract to build his home, obtained clay and
> sticks for use in building other peoples' chimneys, and sold the timber
> off the tract in 1931; (3) plaintiffs have gathered firewood from the
> tract; (4) one plaintiff set out fifty trees in 1967; (5) the same
> plaintiff advised the defendant in 1957 not to cut any more timber
> on her tract; and (6) the defendant did not go back on the tract
> until 1970.

APPEAL by defendants from *Clark, District Judge,* 29
March 1971 Session of District Court held in BLADEN County.

This is an action of trespass to try title to a tract of land
situated in White Oak Township, Bladen County. Defendants
admit having cut and removed timber from the land, but they
deny that the land is owned by plaintiffs and contend that it
is owned by defendant Bryan.

The land in controversy is a 3.1 acre tract bounded on the
west by the center of N. C. State Highway 53 and on the east
by the center of an old road known as the "old main road." The
corners to the tract in controversy are illustrated on the court
map as points 1 and 4, which are in the center of Highway
53, and points B and C, which are in the center of the "old
main road."

Plaintiffs' contended tract, as shown on the court map, is
bounded by the following lines: (1) Beginning at point 4
and running N. 52° 15′ E. 405.6 feet to point C and continuing
past point C 767.4 feet to a point designated on the map as
point 3. (2) From point 3, S. 41° E. 384 feet to a point des-
ignated on the map as point 2. (3) From point 2 S. 49° W. 924.7
feet to point B and continuing past point B 181 feet to point
1. (4) From point 1 with the center of Highway 53 454.5
feet to the point of beginning.

Defendants' contended tract, as shown on the court map,
is bounded by the following lines: (1) Beginning at point C
and running S. 51° 15′ W. 405.6 feet to point 4 and continuing
past point 4 2580 feet to a point designated on the map as

point D. (2) From point D S. 43° E. 1390 feet to a point designated on the map as point E. (3) From point E N. 48° E. 2640 feet to a point designated on the map as point A. (4) From point A, N. 30° 34′ W. 564.9 feet to a point in the center of the "old main road" and continuing with the center of the "old main road" in a generally northerly direction, past point B, to the point of beginning.

Plaintiffs and defendant Bryan claim record title, and title by adverse possession for seven years under color of title, and for twenty years without color of title. The following facts are established by stipulation:

(1) Plaintiffs and defendant Bryan claim record title from a common source; to wit, a deed, recorded 21 December 1888, to R. L. Bryan, describing 160 acres, more or less.

(2) Plaintiffs claim record title from that source through a deed from R. L. Bryan to Thomas McDowell, feme plaintiff's grandfather. This deed (McDowell deed), dated 30 January 1901 and recorded 24 March 1922, contains the following description: "Beginning at stake in W. H. Bryan's line at the Public Road and runs with his line North 45 East to T. M. Woodburn's corner, then as his line South 45 East to the upper line of the Estate of A. J. Bryan, deceased, then as that line South 25 West to the Public Road, then up the road to the beginning, containing 10 acres more or less."

(3) Plaintiffs have acquired all the interest that was owned by Tom McDowell in the lands described in the McDowell deed.

(4) Defendant Bryan claims record title through a deed, dated and recorded 20 July 1957, from R. L. Bryan's only heir at law.

(5) Plaintiffs' contended tract of land and defendants' contended tract of land are divided either by the "old main road" or N. C. Highway 53.

At the conclusion of plaintiffs' evidence and again at the conclusion of all the evidence, defendants moved for a directed verdict on the grounds the evidence was insufficient to show record title in plaintiffs or to show that plaintiffs have acquired title by adverse possession for seven years under color of title or twenty years without color of title. The motions were denied and the case was submitted to the jury under instructions which

permitted the jury to find that plaintiffs or defendant Bryan own the disputed tract under any one of the three theories asserted.

The jury returned a verdict finding that plaintiffs are the owners of and entitled to immediate possession of the land in dispute; defendants trespassed thereon by removing timber as alleged in the complaint, and plaintiffs are entitled to damages in the sum of $244.60. Judgment consistent with the jury verdict was entered and defendants appealed.

*Frank T. Grady and James W. Hill, III, Associate, for plaintiff appellees.*

*Worth H. Hester for defendant appellants.*

GRAHAM, Judge.

Defendants assign as error the overruling of their motions for a directed verdict.

"In an action of trespass when both parties claim title to the land involved, and each seeks an adjudication that he is the owner and entitled to the possession of the disputed property, each has the burden of establishing his title by one of the methods specified in *Mobley v. Griffin,* 104 N.C. 112, 10 S.E. 142; *Day v. Godwin* and *Day v. Paper Co.* and *Day v. Blanchard,* 258 N.C. 465, 128 S.E. 2d 814. Where, as here, the parties claim through a common source, the burden on the issue of title rests upon the 'party asserting title and right of possession to connect his title to the common source of title by an unbroken chain of conveyances and show that (1) the land in controversy is embraced within the bounds of the deeds or other instruments upon which he relies, and (2) the title thus acquired is superior to that claimed by his adversary.' " *Cutts v. Casey,* 278 N.C. 390, 411, 180 S.E. 2d 297, 307.

[1] Stipulations entered by the parties in this case establish that plaintiffs and defendant Bryan claim title to the disputed property from a common source; that plaintiffs' claim of title is connected to the common source by an unbroken chain of conveyances; that the deed from the common source in plaintiffs' chain of conveyances is senior to the deed from the common source in defendants' chain of conveyances. Thus, the only remaining element which plaintiffs were required to prove was

that the land in controversy is embraced within the bounds of the deeds upon which they rely. Since it was stipulated that plaintiffs own whatever lands were conveyed in the McDowell deed, the question is: Did plaintiffs offer evidence sufficient to support a finding by the jury that the disputed tract is embraced within the description contained in that deed? Plaintiffs' evidence on this question tended to show the following:

The feme plaintiff came to Bladen County in 1916 to live with her grandfather, Tom McDowell. She became familiar with the boundaries of the tract of land described in the McDowell deed by following her grandfather around when she was a little girl. She stated "I know the lines and boundaries of this tract" and proceeded to testify, without objection, to where the lines and boundaries are located. Point 4 on the court map (shown as a point in Highway 53) was identified as the beginning point in the McDowell deed and feme plaintiff stated that that corner was marked by a stake, as called for in the McDowell deed, when she first observed it in 1916. The stake was at a road which is now Highway 53. It remained there at least until 1949. W. H. Bryan's line and T. M. Woodburn's corner, referred to in the McDowell deed, were identified by feme plaintiff as the lines shown on the court map as the northerly boundary of plaintiffs' contended tract and the corner designated on the map as point 3. She recalled that this corner was once marked with an iron stake. The next line called for in the McDowell deed proceeds S. 45 E. to the upper line of the estate of A. J. Bryan. The witness testified that this line is between points 3 and 2 on the court map. She stated, "At point 2 on the Court Map there is a pine tree marked with an iron stob down behind it. It's been there ever since I can remember." As to the last two boundaries called for in the McDowell deed, the witness stated: "That is back to number 1 on the map and that's back up the road to the beginning. . . . At point 1 on the map there is just a grapevine there now but when I was about 6 there was a light-wood stob there, but when the road was being worked and being broadened out it took that stake up and it never was put down again, but a grapevine grew up there, and there was a large oak tree there and now there is a small oak tree with that same grapevine on it. . . . Part of the grapevine is still there."

The court surveyor testified in substance that the courses on the court map were normal variations from the courses on

the deed and that the land described in the deed is the same tract of land shown as plaintiffs' contended tract. Other witnesses corroborated plaintiffs' evidence as to the location of several of the corners.

We are of the opinion that the testimony of the feme plaintiff and the court appointed surveyor constitutes sufficient evidence that the description of the McDowell deed fits the land and embraces the land in controversy. See *McDaris v. "T" Corporation,* 265 N.C. 298, 144 S.E. 2d 59. The McDowell deed contained no distances. The courses, according to the surveyor, are substantially those shown on the court map. The corners shown on the court map as points 2 and 3 are not in dispute. Whether the other two corners of the description in the McDowell deed are points 1 and 4 in Highway 53, as contended by plaintiff, or points C and D in the "old main road" as contended by defendants is the crucial question. Another way of putting it is: Is the public road referred to as a boundary in the McDowell deed the "old main road," or another public road located where Highway 53 is now situated?

[2] Defendants contend that Highway 53 was not constructed until after 1901, the year the McDowell deed was executed and delivered; further, that the public road servicing the area before the construction of Highway 53 and at the time the McDowell deed was executed, was the road shown on the court map as the "old main road." They introduced substantial and persuasive evidence in support of these contentions. Plaintiffs, on the other hand, were unable to show what roads existed in the area before the feme plaintiff arrived in Bladen County in 1916. Defendants argue that in failing to offer evidence in this regard, plaintiffs failed to make out a case for the jury. However, feme plaintiff stated that she knew the lines and boundaries of the disputed tract and proceeded to testify as to the location of each of them, including in particular the line from the third corner called for in the McDowell deed "up the road to the beginning." She testified that this line was the same as the one shown between points 1 and 4 on the court map; also, that for many years the beginning corner of the property described in the McDowell deed was marked by an iron stake located at a public sand-clay road which is now Highway 53. The sand-clay road was where Highway 53 is now situated when feme plaintiff arrived in Bladen County in 1916. The "old main road" was also present at that time.

No objection was made to any of feme plaintiff's testimony. Since the admissibility of this testimony was not challenged by objection, it must be treated as before the jury with all its probative force. *Freeman v. City of Charlotte,* 273 N.C. 113, 159 S.E. 2d 327. This being so, the evidence was sufficient to permit the jury to find that at the time the McDowell deed was executed a public road existed at the exact place where Highway 53 is now situated and that it was this public road which was referred to in the McDowell deed as a boundary. Where a boundary line is actually located on the ground is an issue of fact for the jury. *Coley v. Telephone Co.,* 267 N.C. 701, 149 S.E. 2d 14.

[3] We are also of the opinion that the evidence is sufficient to support a finding for plaintiffs on their alternate theory of ownership by adverse possession. The boundaries of the disputed property were well marked and known. Plaintiffs' evidence tended to show that since 1916 they, or their predecessor in title, Tom McDowell, maintained a drain ditch across the property and cleaned the ditch and its bank each year. Tom McDowell used logs from the tract to build his home. He obtained clay and sticks therefrom for use in building chimneys for people in the area. In 1931 he sold the timber off the tract. Since 1916 Tom McDowell, and later plaintiffs, have kept a one-half acre area across the tract "cut down" so that the mailbox located at the road (now Highway 53) can be seen. Firewood has been gathered from the disputed area by plaintiffs and their predecessor in title over a period of years. Feme plaintiff set out fifty trees on the disputed tract in 1967. In 1957 defendant Bryan came on the disputed tract and started cutting logs and wood. The feme plaintiff advised him that the property belonged to her and told him that if he cut any more he would be in trouble. Bryan left and did not go back on the property until 1970.

"Adverse possession means actual possession, with an intent to hold solely for the possessor to the exclusion of others and is denoted by the exercise of acts of dominion over the land in making the ordinary use and taking the ordinary profits of which it is susceptible, such acts to be so repeated as to show that they are done in the character of owner, and not merely as an occasional trespasser. . . ." *Lindsay v. Carswell,* 240 N.C. 45, 81 S.E. 2d 168. Here the tract in question was completely

wooded. The tract was hardly susceptible to acts of dominion different in nature from those which plaintiffs described as having been repeatedly exercised over the land for a period considerably in excess of twenty years. It was for the jury to say whether these acts constituted open, notorious and adverse possession. *Memory v. Wells,* 242 N.C. 277, 87 S.E. 2d 497.

Other assignments of error brought forth and argued by defendants have been reviewed and found without merit.

No error.

Judges BROCK and VAUGHN concur.