NO. COA13-1271

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

ALEX D. McLENNAN, JR., DOROTHY N.
McLENNAN, and RUFUS T. CARR, JR.,
    Plaintiffs,

    v.                                    Halifax County
                                          No. 10-CVS-1051
C.K. JOSEY, JR., DEBORAH G. JOSEY,
JOSEY PROPERTIES, LLC, THOMAS D.
TEMPLE, IV, CRYSTAL TEMPLE, BETTY
JO TEMPLE, and JOSEPH LANIER
RIDDICK, III,
    Defendants.


    Appeal by defendants from order entered 10 June 2013 by

Judge J. Carlton Cole in Halifax County Superior Court.  Heard

in the Court of Appeals 19 March 2014.


        *Rountree & Boyette L.L.P., by Charles S. Rountree, for
        plaintiffs-appellees.*

        *Etheridge, Hamlett & Muray, L.L.P., by Ernie K. Murray, for
        defendants-appellants.*


    ELMORE, Judge.

    Defendants appeal from order granting plaintiffs' motion

for summary judgment.  After careful consideration, we affirm.

## I. Facts

    Alex McLennan, Jr., Dorothy McLennan, and Rufus Carr, Jr.,

(collectively plaintiffs) and C.K. Josey, Jr., Deborah G. Josey,

Josey Properties, LLC., Thomas D. Temple, IV, Crystal Temple, Betty Jo Temple, and Joseph Lanier Riddick, III, (collectively defendants) own adjoining tracts of land with a common boundary located in Halifax County. In July 2010, defendants recorded a map at Book 2009, Page 193, and a deed at Book 2321, Page 750, in the Halifax County Registry that asserted ownership of an area allegedly owned by plaintiffs. On 27 August 2010, plaintiffs filed a "COMPLAINT TO ESTABLISH BOUNDARY AND QUIET TITLE" pursuant to N.C. Gen. Stat. § 41-10. Plaintiffs alleged that defendants "claimed ownership of lands owned by Plaintiffs and have created a cloud on title to Plaintiff's [sic] property." Thereafter, plaintiffs filed a motion for summary judgment that was heard before Judge J. Carlton Cole on 25 and 26 February 2013. At the hearing, the evidence showed that both parties obtained title to their tracts from a common source, David Clark, on 10 November 1882. Following Clark's death, his lands were partitioned and divided among his heirs in the "Report of Commissioners in Partition" (the partition). Plaintiffs' source of title is "Lot 4," allocated to Anna Clark, and defendants' source of title is "Lot 8," allotted to Dora Clark. Plaintiffs' southern boundary line and defendants' northern boundary line are shared in common. The partition

describes the common boundary line as "down the run of [Gaynor's] Gut to the Canal[.]" The dispute arises from the parties' disagreement as to the location on the ground of the run of the gut to the canal. Both parties agree that the shared boundary runs southwest to a point where the flow of the gut diverges. However, plaintiffs argue that the gut forks left at that divergent point and runs through a dam, a pond, and then empties into the canal. Defendants contend that the gut forks right at the split and then empties into the canal.

## II. Analysis

### a.) Prima Facie Case

Defendants argue that the trial court erred in granting plaintiffs' motion for summary judgment. Specifically, defendants aver that plaintiffs failed to meet their burden of establishing the on-the-ground location of the claimed boundary line: the run of the gut to the canal. We disagree.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 523-24, 649

S.E.2d 382, 385 (2007)). We must consider "the pleadings, affidavits and discovery materials available in the light most favorable to the non-moving party[.]" *Pine Knoll Ass'n*, *Inc. v. Cardon*, 126 N.C. App. 155, 158, 484 S.E.2d 446, 448 (1997).

Pursuant to N.C. Gen. Stat. § 41-10, an individual can institute an action to remove a cloud on title "against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" N.C. Gen. Stat. § 41-10 (2013). The statute provides this express authority in an attempt to "free the land of the cloud resting upon it and make its title clear and indisputable, so that it may enter the channels of commerce and trade unfettered and without the handicap of suspicion[.]" *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997) (citation and quotation omitted). Should the plaintiff establish "a *prima facie* case for removing a cloud on title, the burden rests upon the defendant to establish that his title to the property defeats the plaintiff's claim." *Id*. (citation omitted). The plaintiff establishes a *prima facie* case for removing a cloud on title upon satisfying two prongs: "(1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim

in the land adverse to plaintiff's title, estate or interest." *Hensley v. Samel*, 163 N.C. App. 303, 307, 593 S.E.2d 411, 414 (2004) (citation omitted).  In order to establish ownership of the disputed land under prong one, the plaintiff can utilize the "common source of title" doctrine, which requires him "to connect both [himself] and defendants with a common source of title and then show in [himself] a better title from that source."  *Chappell v. Donnelly*, 113 N.C. App. 626, 629-30, 439 S.E.2d 802, 805 (1994) (citation omitted).  Additionally, the plaintiff must show that "the disputed tract lies within the boundaries of their property."  *Id*. (citations omitted).  Accordingly, the burden is on the plaintiff to establish "the on-the-ground location of the boundary lines which they claim."  *Id*. (citation omitted).  He must "locate the land by fitting the description in the deeds to the earth's surface."  *Id*. (citation and quotation omitted).  In locating such land:

> courts endeavor to place themselves in the position of the parties at the time of the conveyance, in order to ascertain what is intended to be conveyed; for, in describing the property, parties are presumed to refer to its condition at that time, and the meaning of their terms of expression can only be properly understood by a knowledge of their position, and that of the property conveyed.

*Cox v. McGowan*, 116 N.C. 74, 76, 21 S.E. 108, 109 (1895) (citation omitted). It necessarily follows that "[r]esort may not be had to a junior conveyance for the purpose of locating a call in a senior deed." *Bostic v. Blanton*, 232 N.C. 441, 445, 61 S.E.2d 443, 446 (1950) (citations omitted).

In *Poe v. Bryan*, the plaintiff testified that she had personal knowledge of the contended boundary line because she lived on the tract of land during her youth and learned about the boundary lines from her grandfather. 12 N.C. App. 462, 466, 183 S.E. 2d 790, 792-93 (1971). A surveyor also testified that "the courses on the court map were normal variations from the courses on the deed and that the land described in the deed is the same tract of land shown as plaintiffs' contended tract." *Id.* at 466-67, 183 S.E.2d at 793. We held that "the testimony of the feme plaintiff and the [trial] court appointed surveyor constitutes sufficient evidence that the description of the . . . deed fits the land and embraces the land in controversy." *Id.* at 467, 183 S.E.2d at 793. Conversely, our Supreme Court in *Day v. Godwin* held that the plaintiff failed to meet his burden to locate the on-the-ground location of the disputed land because no survey of the disputed land was conducted nor did plaintiff have personal knowledge about the location of the

disputed tract.  258 N.C. 465, 470-71, 128 S.E.2d 814, 817-18 (1963).

In the case at bar, plaintiff McClennan testified that he worked on his grandfather's farm and Lot 4 since 1958.  During that time, he "came to know the location of Gaynor's Gut from the Dam at Blue Pond to the Dam at Coon Pond, and from the Dam at Coon Pond through Coon Pond to where Gaynor's Gut enters Clark's Canal."  In 1967, he managed the farm on a full-time basis, and it required that he "know the location of Gaynor's Gut and the other boundaries of the property being managed." Plaintiff McClennan testified that the disputed boundary line encompassing plaintiffs' land "has been a well known, well marked and agreed upon line between our lands since the division of the David Clark lands in the 1800's."  Additionally, a professional surveyor, Donald S. Hilhorst, surveyed Gaynor's Gut in 2010 using various recorded documents in the Halifax County Register of Deeds Office.  He found the boundary line to comport with plaintiff McClennan's testimony.  Hilhorst's survey was also consistent with "the legal description of Gaynor's Gut" found in a 1909 deed and "the recorded survey of the Mrs. Anna C. Arnold [map]."

The 1909 deed divided defendants' predecessors' Lot 8 into two parcels and gave one 805-acre parcel to the Wilts Veneer Company with the remaining tract to be held by defendants' predecessors. The deed explicitly indicated a shared boundary line between Wilts Veneer Company and Anna Arnold's (plaintiffs' predecessor in title) Lot 4, which necessarily included the disputed land as part of Lot 4. It also contained a course and distance description of the run of Gaynor's Gut that places the disputed tract within Lot 4.

The Anna Arnold map was created in 1918 to reflect a portion of Lot 4 that was given by Anna Arnold to Wilts Veneer Company in a timber rights conveyance. It included a metes and bounds description of Gaynor's Gut from Lot 4's northeast corner down to its run to the Canal. The metes and bounds description reflected on the map shows the disputed land to have been owned by Anna Arnold.

Although Hilhorst used junior conveyances by referencing the 1909 and 1918 documents in his survey, they did not enlarge the plaintiffs' boundary lines, but rather provided an unambiguous specific description of Gaynor's Gut, which comports with the general description found in the partition. *See Carney v. Edwards*, 256 N.C. 20, 24, 122 S.E.2d 786, 788-89 (1961) ("It

is . . . well settled that a general description will not enlarge a specific description when the latter is in fact sufficient to identify the land which it purports to convey. Only when the attempted specific description is ambiguous and uncertain will the general prevail." (citation omitted)). In totality, plaintiffs' evidence was sufficient to meet their burden to show that the disputed area lies within the boundaries of their land.

## b.) Defendants' Burden

Since plaintiffs established a *prima facie* case of title to the disputed land, defendants were required to establish that their title was superior.

On appeal, however, defendants present no evidence by way of deeds in their chain of title to establish their superior claim to the disputed land. Moreover, defendants' recorded map in 2010 and subsequent deeds using the map's boundary description to convey the disputed land are junior to the 1909 and 1918 documents that describe the run of Gaynor's Gut. Thus, the descriptions found in the 1909 and 1918 documents control. *See Goodwin v. Greene*, 237 N.C. 244, 250, 74 S.E.2d 630, 634 (1953) ("Where a junior deed calls for a corner or line in a prior deed . . . it is not permissible to resort to a call in

the junior deed for the purpose of establishing the call or line in the prior deed."). The 1909 deed is included by reference in each deed within defendants' chain of title. Their chain of title specifically excludes defendants and their predecessors from the tract that was given to the Wilts Veneer Company in the 1909 deed. As previously mentioned, the 1909 deed establishes that the disputed land was never a part of defendants' Lot 8.

Although defendants offer parol evidence in the form of a 2010 elevation study, affidavits of individuals with personal knowledge of the boundary line, and other extrinsic testimony to show that the disputed land belongs to them, reliance on such evidence is improper. *See Overton v. Boyce*, 289 N.C. 291, 293-94, 221 S.E.2d 347, 349 (1976) ("When the deed itself, including its references . . . describes with certainty the property intended to be conveyed, parol evidence is admissible to fit the description in the deed to the land" but is inadmissible to "enlarge the scope of the description in the deed." (citations omitted)). Thus, defendants failed to establish that their title to the disputed property was superior to plaintiffs' title. Accordingly, the trial court properly granted summary judgment to plaintiffs.

### III. Conclusion

In sum, we affirm the trial court's order granting plaintiffs' motion for summary judgment because no genuine issue of material fact exists as to the true location of the boundary line as contemplated by the partition.

Affirmed.


Judges McCULLOUGH and DAVIS concur.