BRYANT, Judge.
This case involves a boundary dispute between plaintiffs, Albert S. Daughtridge, Jr. and Mary Margret Holloman Daughtridge (collectively plaintiffs), and defendant, Tanager Land, LLC (defendant). Both parties own land in Halifax County that shares a common boundary. Plaintiffs' and defendant's titles descend from a common source and reference a plat map that is incorporated by reference. However, the map is unclear as to what the boundary is and where the boundary line between their respective lots is located.
From 1916 to 2008, there is no evidence that the boundary between the lots at issue was ever contested. In 2008, prior to purchasing land in Halifax County, defendant had a survey performed. After purchasing the land, defendant installed a gate and placed wooden posts on land that plaintiffs believed to be theirs. In addition, defendant and plaintiffs both claimed title and ownership of a contested strip of land running through the area near a portion of their common boundary. Plaintiffs brought suit to have defendant's claim to title quieted and requested a declaratory judgment "as to the rights, duties, and ownership of the land."
After careful review, we have determined that this case was properly filed as a quiet title action. We hold the trial court properly ordered partial summary judgment and appropriately considered the boundaries as a matter of law. Accordingly, we affirm the final judgment and assessment of costs.
BACKGROUND
In 1910, Nancy Best conveyed a tract in the Palmyra Township to L.B. Fleming. In 1916, Fleming subdivided the property into 17 numbered lots, recording a plat map with the Halifax County Registry, in Plat Book 1, Page 32 (the Best Farm Map). The parties agree that they both derive title from the Best Farm Map and that the deed descriptions in both chains of title incorporate the Best Farm Map by reference and the lot numbers given therein. Nevertheless, each party believes that the disputed land is within its own boundary as depicted on the Best Farm Map below.
?
(Lot Numbers 7 and 8; direction indicator added)
The Best Farm Map shows that a dam runs along a portion of Lots 8 and 16. The parties disagree on the boundary between plaintiffs' property (Lots 7 and 16) and defendant's property (Lot 8) and the location of the boundary line. Plaintiffs claim the boundary of Lot 16 is the high water mark where the land meets the water of White's Mill Pond. Defendant claims that the boundary between Lots 8 and 16 is the earthen dam with general rules of construction dividing the dam in half. As a result, the northern side of the western half of the dam is a part of Lot 8 and the dividing centerline continues as the boundary up until the point that it intersects Lot 7's clearly designated eastern boundary.[1]
Plaintiffs filed a complaint and notice of lis pendens against defendant seeking a judgment quieting title and a declaratory judgment. Defendant filed a motion to dismiss and a motion for a more definite statement. The trial court heard the motions, and subsequently entered orders denying the motion to dismiss and granting the motion for a more definite statement. In response to these orders, plaintiffs filed an amended complaint. Defendant then answered.
Defendant filed a motion for partial summary judgment as to the action to quiet title, and the trial court granted defendant's motion for partial summary judgment. Defendant was declared to be the lawful owner of the property in question, and plaintiffs' notice of lis pendens was dismissed. The trial court filed the final judgment and assessment of costs which incorporated the motion for partial summary judgment. Plaintiffs appeal.
ANALYSIS
We address plaintiffs' arguments on appeal that the trial court erred by: (I) determining that the boundary line between plaintiffs' and defendant's properties is the centerline of the dam; (II) granting defendants motion for partial summary judgment as to the action to quiet title; (III) entering summary judgment without ordering additional fact finding procedures, including a compulsory reference; and (IV) granting defendant's motion for entry of final judgment and assessment of costs.
I & II. Partial Summary Judgment
Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' When considering a motion for summary judgment, [we] ... view the presented evidence in a light most favorable to the nonmoving party.
In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation omitted) (quoting Forbis v. Neal , 361 N.C. 519, 523-24, 649 S.E.2d 382, 385 (2007) ).
A. Dismissal of Plaintiffs' Complaint
Under our General Statutes, section 41-10, an individual can institute an action to remove a cloud on title "against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" N.C. Gen. Stat. § 41-10 (2017). A plaintiff establishes a prima facie case for removing a cloud on title by satisfying two prongs: "(1) the plaintiff must own the land in controversy, or have some estate or interest in it; and (2) the defendant must assert some claim in the land adverse to plaintiff's title, estate or interest." McLennan v. Josey , 234 N.C. App. 45, 47, 758 S.E.2d 888, 890 (2014) (quoting Hensley v. Samel, 163 N.C. App. 303, 307, 593 S.E.2d 411, 414 (2004) ). Plaintiffs bear the burden of proving valid title in themselves by either (1) reliance on the Real Property Marketable Title Act, or (2) utilization of a traditional method of proving title. Chappell v. Donnelly , 113 N.C. App. 626, 629, 439 S.E.2d 802, 805 (1994).
Additionally, because defendant contested plaintiffs' alleged title to the land in controversy, plaintiffs must show that "the disputed tract lies within the boundaries of their property." Id. (citations omitted). Accordingly, plaintiff must establish "the on-the-ground location of the boundary lines which they claim" and "locate the land by fitting the description in the deeds to the earth's surface." Id. (citation omitted).
In locating the land,
courts endeavor to place themselves in the position of the parties at the time of the conveyance, in order to ascertain what is intended to be conveyed; for, in describing the property, parties are presumed to refer to its condition at that time, and the meaning of their terms of expression can only be properly understood by a knowledge of their position, and that of the property conveyed.
McLennan , 234 N.C. App. at 48, 758 S.E.2d at 890-91 (citation omitted). Thus, necessarily, a plaintiff may not resort to a junior conveyance "for the purpose of locating a call in a senior deed." Id. at 48, 758 S.E.2d at 891 (quoting Bostic v. Blanton, 232 N.C. 441, 445, 61 S.E.2d 443, 446 (1950) ).
In McLennan , we held that the plaintiffs' evidence was sufficient to meet the burden to show the disputed area was within the boundaries of their land: a plaintiff testified that he worked on the lot in question and came to know the area in dispute had been a part of the lot since the 1800's; a professional surveyor surveyed the disputed area using various recorded documents and found the boundary line to comport with the plaintiff's testimony; and the survey was also consistent with junior conveyances. Id. at 48-49, 758 S.E.2d at 891-92.
Similarly, in Poe v. Bryan, 12 N.C. App. 462, 183 S.E.2d 790 (1971), the plaintiff testified to personal knowledge of the contended boundary line where she had lived on the tract of land during her youth and her grandfather had explained the boundaries of the property to her at that time. Also, a surveyor testified "that the courses on the court map were normal variations from the courses on the deed and that the land described in the deed is the same tract of land shown as [the] plaintiffs' contended tract." 12 N.C. App. at 466-67, 183 S.E.2d at 793. Our Court held that the testimonies of the plaintiff and the surveyor were sufficient to show the disputed area was within the boundaries of their land. Id. at 467, 183 S.E.2d at 793.
Consistent with this Court's rulings, our Supreme Court has held a plaintiff does not locate the on-the-ground location of the disputed land when no survey of the disputed land was conducted and the plaintiff had no personal knowledge about the location of the disputed tract. Day v. Godwin , 258 N.C. 465, 470, 128 S.E.2d 814, 818 (1963).
Here, plaintiffs and defendant each contend they have a common source of title and that the Best Farm Map established the boundaries between Lots 7, 8, and 16. However, their interpretations of the plat differ. Plaintiffs posit that Lot 16 extends to the high water mark and the mark on the plat by the "Water Oak" designates a dividing corner, which would result in plaintiffs' ownership of the entire dam. This is at odds with defendant's position that the dam is the boundary line.
Plaintiffs' evidence that their property extends to the high water mark includes an affidavit by plaintiff Albert S. Daughtridge, Jr., which states the land in question has been in his family for approximately 100 years, and a survey by surveyor Michael Stahl. Stahl's survey map only appears to summarize the case before us by demarcating the contested property. It does not claim that the boundary line comports with plaintiff Albert S. Daughtridge, Jr.'s affidavit. Plaintiffs do not provide a survey finding the boundary line comports with plaintiff Albert S. Daughtridge, Jr.'s testimony. In view of these facts, it appears plaintiffs have failed to offer competent evidence to fit the disputed land to the description contained in a paper-writing offered as evidence of title, and we need not address the boundary line before so holding. Whether the boundary line comports with plaintiffs' or defendant's assertions, plaintiffs did not put forth sufficient evidence to make a prima facie case of title to the disputed area. Therefore, the trial court did not err by dismissing plaintiff's claim to the property.
B. Defendant's Claim to Title and Boundary Lines
In its answer, defendant requested entry of judgment granting defendant's claim to quiet title and granting defendant rights to its property and establishing that defendant's boundaries are as shown in the survey recorded in plat book PL6, Slide/Page 181-Q in the Halifax County Registry. The trial court held that defendant showed itself to have title to the land in dispute and that the dam constituted the boundary between Lots 8 and 16.
The quieting of title and the determination of the boundary line's location on the Best Farm Map are two different, but related, inquires. Defendant must establish a prima facie case to remove a cloud on title. Cf. McLennan , 234 N.C. App. at 49, 758 S.E.2d at 892. As to boundaries, "[w]hat are the boundaries is a matter of law to be determined by the court from the description set out in the conveyance. Where those boundaries may be located on the ground is a factual question to be resolved by the jury." Chappell , 113 N.C. App. at 630, 439 S.E.2d at 805 (quoting Batson v. Bell , 249 N.C. 718, 719, 107 S.E.2d 562, 563 (1959) ).
Because plaintiffs contest defendant's title, defendant was also required to demonstrate the disputed strip lay within the boundaries of the record title. See id. As defendant relies on deeds as proof of title, defendant must also provide evidence of the on-the-ground location of the boundaries set out in the deed. Id. This "is ordinarily presented by a surveyor who has surveyed [the] property using the descriptions" set out in the deeds. Id.
In the instant case, defendant tendered evidence to indicate that the on-the-ground location of the disputed boundary line referenced in the Best Farm Map was consistent with defendant's interpretation of the plat's boundary lines. All relevant recorded surveys, with the exception of Stahl's survey-which merely illustrated the instant dispute-confirm that the dam is the relevant monument for determining the boundary between the lots at issue. One recorded survey, entitled "Survey for Bent River Plantation, LLC, Tracts 8 & 9 on the Map Recorded in M.B. 1, Pg. 32 of the Halifax County Registry" by James D. Grant, professional land surveyor, dated 10 September 2008 and recorded in Map Book PL6, Page 181-Q, Halifax County Registry (the Grant Survey), illustrates the disputed area using the Best Farm Map and various recorded documents and reflects the boundary line as comporting with defendant's contention that the dam was the boundary line. Moreover, since 1966, plaintiffs have incorporated the survey recorded in Map Book 12, Page 44B (the "Everett Heirs Map") in their deed descriptions. The Everett Heirs Map also shows the dam as the boundary. Not only does the plat support defendant's claim to title over the disputed land but the junior conveyances also support defendant's argument that the dam was intended to be a monument.
A "monument" consists of any object or mark on the land that may serve to locate the boundary line at a given point. It may be a river, rock, tree, or other natural object, more or less permanent, or it may be artificial, as a wall, post, ditch, or road.
1 JAMES A. WEBSTER, JR. , WEBSTER'S REAL ESTATE LAW IN NORTH CAROLINA § 10.35 (Patrick K. Hetrick & James B. McLaughlin, Jr., eds., 6th ed. 2011). Generally, a call for a monument as a boundary line in a deed will convey the land to the center of a monument that has width. See, e.g., Brown v. Hodges , 232 N.C. 537, 61 S.E.2d 603 (1950).
In contrast, plaintiffs contend the black dot on the Best Farm Map labelled "Water Oak" is a dividing point that marks the boundary between Lots 8 and 16 where the swamp run meets the high water mark. However, the water oak's location cannot be identified in present day. See Lumber Co. v. Lumber Co. , 169 N.C. 80, 92-93, 85 S.E. 438, 445-46 (1915) (holding that if the evidence was sufficient to identify a tree designated on the plat, it would be used in establishing a lot's boundary). Therefore, because the high water line is unlabeled and the water oak cannot be identified, we hold the dam is a monument that marks the boundary between the lots. This is consistent with the principle that the more permanent monuments control the interpretation of boundaries on plats. See Tice v. Winchester , 225 N.C. 673, 678, 36 S.E.2d 257, 260 (1945) ("[M]ore permanent monuments referred to in the deed would, under the authorities mentioned, control over course and distance." (citation omitted) ). Furthermore, this conclusion is consistent with junior conveyances and the survey that puts the disputed tract on-the-ground.
Defendant has made a prima facie case of title, and plaintiffs have not made a prima facie case. Thus, plaintiffs have failed to show they have superior title to defendant.
Plaintiffs did not create a genuine issue of material fact to preclude the trial court from granting partial summary judgment. Therefore, the trial court did not err by quieting defendant's record title to the property, and determining that the boundary line between the properties is as shown by the Grant Survey.
III. Additional Fact Finding Procedures
Plaintiffs argue that the trial court committed reversible error by failing to: (1) conduct a hearing to take testimony, accept exhibits, and hear arguments; and (2) render a declaratory judgment pursuant to N.C. Gen. Stat. §§ 1-253 et seq . Although plaintiffs cite to cases where the trial court ordered a compulsory reference and urges our Court that the parties would be better served if the trial court conducted a hearing, plaintiffs cite to nothing in our law that required the trial court to order a compulsory reference. In circumstances such as these, there is no such requirement. Therefore, we hold that the trial court did not err when it did not utilize these additional fact finding procedures.
IV. Entry of Final Judgment and Costs
In this appeal, plaintiffs' brief includes a heading that states the trial court committed reversible error by granting defendant's motion for entry of final judgment and assessment of costs. However, plaintiffs provide no argument or citations to authority in support of this argument. Therefore, this issue is deemed abandoned, and we find no need to address it. See Consol. Elec. Distrib. v. Dorsey , 170 N.C. App. 684, 686-87, 613 S.E.2d 518, 520 (2005).
Conclusion
Upon careful review of the issues before our Court, we hold that the trial court properly ordered partial summary judgment as to the action to quiet title and appropriately considered the boundaries as a matter of law. Accordingly, we affirm the trial court's final judgment and assessment of costs.
AFFIRMED.
Report per Rule 30(e).
Judge ARROWOOD concurs.
Judge MURPHY dissents without separate opinion.

This result, which the trial court adopted, carries the centerline of the dam past the point where the dam ends and over a portion of land that is not subject to the same potential rules of construction.