IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-902

No. COA22-433

Filed 29 December 2022

Wake County, No. 10 CVD 20375

ROBERT RICHARD KOZEC, JR., Plaintiff,

v.

KRISTEN ANNE MURPHY, Defendant.

Appeal by Plaintiff from order entered 12 October 2021 by Judge J. Brian Ratledge in Wake County District Court. Heard in the Court of Appeals 16 November 2022.

*Manning, Fulton & Skinner, P.A., by Michael S. Harrell, for plaintiff-appellant.*

*Schiller & Schiller, PLLC, by David G. Schiller, for defendant-appellee.*

MURPHY, Judge.

¶ 1  In its hearing on Mother's motion to modify a permanent child custody order, the trial court abused its discretion by not first reviewing various child protective services documents, already submitted along with an affidavit as a part of the sealed court file pursuant to a prior N.C.G.S. § 7B-302(a1) order, before denying Father's request to enter the documents as part of his evidence. Further, based upon the statements of the trial court and arguments by counsel, it is unclear as to whether

the trial court's exclusion of these documents was limited to an authentication basis or extended to exclusion under either North Carolina Rule of Evidence 803(8) or 902(4). We vacate and remand for the trial court to hold a new hearing on Mother's motion to modify permanent child custody that affords both parties the opportunity to present argument on the documents' admissibility in conjunction with the trial court's simultaneous review of the documents.

## **BACKGROUND**

¶ 2     This case arises out of the trial court's 12 October 2021 *Order Modifying Permanent Child Custody* ("the Order") of the minor children of Plaintiff-Appellant Robert Kozec ("Father") and Defendant-Appellee Kristen Murphy ("Mother").

¶ 3     The parties were never married but are the parents of two children, of whom Mother was provided legal and physical custody and of whom Father was granted visitation by a permanent custody order entered 6 February 2013. On 3 November 2016, Mother filed a motion to modify custody and sought emergency suspension of all contact between Father and the children. The trial court entered a *Temporary Emergency Custody Order* on 7 December 2016, suspending Father's visitation and ordering he have no contact with the children. On 13 June 2017, Father filed a *Petition for Writ of Certiorari* requesting that we review this order, which a panel of this Court allowed on 5 July 2017; the panel in an unpublished opinion subsequently vacated the order because it constituted a custody modification that "d[id] not make

the substantial change of circumstances and its effect upon the children clear." *See Kozec v. Murphy ("Kozec I")*, 261 N.C. App. 115, 2018 WL 3978150, *1-*3 (Aug. 21, 2018) (unpublished) (citation and marks omitted).

¶ 4        On 22 August 2018, one day after we filed the decision in *Kozec I* but more than a week before the mandate of our decision issued, Mother filed an *Ex Parte Motion for Emergency Custody*, seeking to suspend Father's visitation with the minor children and prevent him from having any communication with them, based on various allegations of changed circumstances that created an imminent risk of physical harm to the minor children if Father was allowed to continue visiting and communicating with them. Mother's 22 August 2018 motion relied heavily on allegations made by a therapist, Ms. Mary Jernigan, who had started seeing the children approximately two months prior and who initiated child protective services investigations in both Wake and Johnston counties after those two months. That same day, the trial court entered an *ex parte* emergency custody order, but it did not have jurisdiction over the matter until *Kozec I*'s mandate issued, resulting in us vacating the 22 August 2018 emergency order on 29 August 2018. On 10 September 2018, the trial court entered an *ex parte* emergency order, and Mother's 22 August 2018 motion to modify child custody was set for a "return hearing" on 18 September 2018. Mother filed an *Amended Motion to Modify Custody* on 17 September 2018, which contained some of the same allegations included in her 2016 motion seeking

emergency custody, in addition to allegations regarding matters occurring since entry of the 2016 order that we vacated in *Kozec I*. After the return hearing, the trial court entered a *Temporary Custody Order and Notice of Hearing* on 30 October 2018, awarding sole legal and physical custody to Mother.

¶ 5        On 3 April 2019, the trial court entered an *Order and Preliminary Injunction* that allowed the parties' counsel, but not the parties, to access the children's medical and mental health records that were ordered to be made available on the "[eleventh] [f]loor of the Wake County Courthouse in the Family Court Office." The parties' counsel were permitted to "review those records but [could] not make copies, take photographs or otherwise reproduce the records and remove them from the Wake County Courthouse." However, when the attorney serving as Father's counsel was permitted to withdraw from representing Father, he informed the trial court that Father would need access to certain records "to adequately prepare for a pending [o]rder to [s]how [c]ause to be heard at a later date." The trial court entered a *Protective Order* on 21 August 2019, which concluded that "allowing [Father] access to the children's private treatment records is ill-advised and not in their best interest" and ordered that Father could choose to call the children's therapists as fact witnesses who would be constrained by a limiting instruction so as to prevent the specific divulging of the confidential treatment information of the minor children.

¶ 6        On 27 December 2019, the trial court entered a *Temporary Order for Child*

*Custody (Review Hearing)*, concluding "[t]he terms of the Temporary Custody Order entered [30 October 2018] shall remain in full force and effect and shall not be modified. [Mother] shall retain sole legal and physical custody."

¶ 7    Mother's motion to modify permanent child custody was heard on 14 and 15 June 2021. During the modification hearing, the trial court denied Father's motion to admit several Wake County Child Protective Services records ("the CPS Records"), including investigations and assessments conducted by the agency relating to the parties' minor children. CPS Records were subpoenaed by Mother and the documents were placed under seal by the trial court's *Amended Protective Order* entered 5 February 2018. Under the *Amended Protective Order*, the trial court ordered the CPS Records to be provided to the parties' counsel for their review. Subject to the provisions of N.C.G.S. § 7B-302(a1), the trial court classified the CPS Records as "relevant and necessary to the trial in this matter and [as being] unavailable from any other source" such that their disclosure to counsel was permitted. By its 5 February 2018 order, the trial court placed significant limits on counsel's review and copying of the documents.

¶ 8    After denying, without consideration of the "relevant" sealed documents, Father's motion to admit the CPS Records into evidence during the 14 and 15 June 2021 hearing, the trial court announced its ruling on Mother's motion to modify, which it later memorialized in the Order entered 12 October 2021. The Order, *inter*

*alia*, finds as fact that Father sexually abused his own children, decrees that Mother shall have sole legal and physical custody, and bars Father from having contact with the minor children. Father timely appeals the Order.

## ANALYSIS

Father urges us to "vacate and reverse [the Order] and remand for a new trial where *all* the relevant evidence (including the evidence previously and erroneously excluded) is considered by the trial court before determining if a modification of the permanent custody order is warranted." Father argues the trial court erred in excluding the CPS Records he attempted to offer into evidence and the findings of fact in the Order were, as a result of the documents' exclusion, made under a misapprehension of law that requires us to vacate the Order.

"'A trial court may order the modification of an existing child custody order if the [trial] court determines that there has been a substantial change of circumstances affecting the child's welfare and that modification is in the child's best interests.'" *Peeler v. Joseph*, 263 N.C. App. 198, 201 (2018) (quoting *Spoon v. Spoon*, 233 N.C. App. 38, 41 (2014) (citation omitted)). "Our court reviews a trial court's decision to modify an existing custody order for[] '(1) whether the trial court's findings of fact are supported by substantial evidence[] and (2) whether those findings of fact support its conclusions of law.'" *Id.* "[W]hether changed circumstances exist is a conclusion of law" that we review *de novo*. *Thomas v. Thomas*, 233 N.C. App. 736, 739 (2014)

(citation omitted); *see also Peeler*, 263 N.C. App. at 201. "[C]ourts must consider and weigh all evidence of changed circumstances which [a]ffect or will affect the best interests of the child, both changed circumstances which will have salutary effects upon the child and those which will have adverse effects upon the child." *Hibshman v. Hibshman*, 212 N.C. App. 113, 121 (2011) (citation and marks omitted).

¶ 11        However, "[t]he dispositive issue here—the trial court preventing [Father] from presenting certain evidence—is an evidentiary issue." *Cash v. Cash*, 284 N.C. App. 1, 2022-NCCOA-403, ¶ 14. Although Father identifies a potential conflict in our caselaw as to whether a *de novo* or an abuse of discretion standard applies to evidentiary issues, we apply the more onerous standard and consider whether the trial court abused its discretion by excluding the CPS Records.[1] "A trial court abuses its discretion when it acts under a misapprehension of law." *Id.* (citations omitted).

¶ 12        As to the documents at the heart of the dispositive issue raised by this appeal, at the modification hearing, the trial court denied Father's motion to admit the CPS Records on the basis that Father did not have "any[one] to come and . . . authenticate or, as [Mother's counsel] aptly put it, cross-examine maybe what is or isn't in the

---

[1] In *State v. Clemons*, 274 N.C. App. 401, 409-12 (2020) (citations omitted), we discussed the conflict in the context of our review of a "decision regarding authentication" and stated, "[b]ased on . . . our extensive caselaw explicitly applying de novo review on issues of authentication, we conduct de novo review of whether the evidence at issue here was properly authenticated." However, in this case, we do not make a determination about which standard of review *should* apply because the result would be the same under either standard.

report." This basis was erroneous as it appears it was rooted in a misapprehension of law that child protective services records must be authenticated by live witness testimony even where they may qualify as public records under Rule 902(4). Under Rule 902(4), "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required" for the following records:

> (4) Certified Copies of Public Records.—A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification by certificate complying with paragraph (1), (2), or (3) or complying with any law of the United States or of this State.

N.C.G.S. § 8C-1, Rule 902(4) (2021); *see id.* § 8C-1, Rule 1005 (2021) ("The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with Rule 902 . . . ."). We therefore hold that a trial court acts under a misapprehension of law and abuses its discretion where it excludes documents on the basis that there is no live witness present to authenticate them without first determining whether they fall under Rule 902(4).

¶ 13        Here, even when Father's counsel reiterated during the hearing that the documents were CPS Records embraced under Rule 902(4) and do not require

authentication by live witness testimony, the trial court noted its past understanding was that child protective services records and other public records require that "somebody . . . authenticate[] the[] records or [say,] '[y]eah, this is what it says to be.'" The trial court, in finishing with Father's counsel's argument, characterized the origin of its reasoning: "So it's not your argument, okay, that's the *policy*." By excluding the CPS Records based on this apparent policy without first determining they were not records that may be authenticated by certification under Rule 902(4), the trial court acted under a misapprehension of law.

¶ 14    Mother's initial response—that Father allegedly did not have the affidavit to present to the trial court during the hearing because he did not subpoena the CPS Records—does not alter our conclusion. Mother contends "the [trial] court [] did not actually have the authenticating affidavit before it" and "[Father] should not now be heard to complain that the trial judge would not admit evidence that the trial judge did not have before him based upon an authenticating affidavit that was also not before him." We are not convinced. Pursuant to the non-traditional offer of proof employed by the trial court here, the authenticating affidavit certifying the CPS Records as public records is properly before us on appeal. Based on when the affidavit was signed and when Wake County Child Protective Services was ordered to produce the CPS Records pursuant to the *Amended Protective Order* entered 5 February 2018, the Record demonstrates the affidavit was supplied with the CPS Records and existed

long before the June 2021 hearing on Mother's motion. There was no indication at the hearing that Father did not have the affidavit to present to the trial court nor that the decision excluding the CPS Records was due to Father lacking the affidavit. Indeed, as our holding emphasizes, *supra* ¶¶ 12-13, the trial court did not consider the affidavit *at all* because it believed live witness testimony was necessary to authenticate the CPS Records and did not review the sealed documents.

¶ 15        As to the prejudice to Father from the exclusion of the CPS Records, such prejudice may be relevant in our analysis if we were determining whether the trial court correctly applied the law that it did not misapprehend. But our inquiry in the case *sub judice* is focused on a misapprehension of law that is the basis of the trial court's exclusion of evidence. Where a trial court acts under a misapprehension of law in excluding evidence, it commits an abuse of discretion, and this abuse of discretion must be remedied by vacating and remanding for the parties to have a full opportunity to be heard upon trial court's corrected apprehension of the applicable law. *See, e.g.*, *Cash*, 2022-NCCOA-403 at ¶¶ 15-27. We hold that such an abuse of discretion occurred here with the trial court's erroneous requirement that the CPS Records must be authenticated by live witness testimony even if the documents qualified as public records under Rule 902(4). However, this is not the end our inquiry on appeal.

¶ 16        Mirroring his contentions below regarding the admissibility of the documents,

Father argues the CPS Records should been considered by the trial court as they are embraced by the public records exception to the hearsay rule provided by Rule 803(8). The trial court had indicated it was skeptical of Father's assertions that the CPS Records fell under the hearsay exception in Rule 803(8) and qualified as public records that may be authenticated by certification under Rule 902(4). *See* N.C.G.S. § 8C-1, Rule 803(8) (2021); N.C.G.S. § 8C-1, Rule 902(4) (2021). The trial court ultimately did not contain a stated rationale in its written order excluding the CPS Records, which stated, "[Father], in his case in chief, moved for admission of the [CPS Records], which had been previously subpoenaed by [Mother] for a prior hearing in this matter. . . . [Mother] objected to the introduction of these records, and the Court sustained [Mother's] objection." As such, given that the Record is unclear as to whether the trial court excluded the CPS Records as hearsay not falling under Rule 803(8) or as not constituting certified public records that can be authenticated by affidavit under Rule 902(4), we remand for Mother and Father to have the opportunity to present argument on these issues.

¶ 17 The trial court misapprehended the law and abused its discretion by excluding the CPS Records. Additionally, as it is unclear from the hearing transcript whether the trial court ultimately excluded the CPS Records solely on this basis or also on the bases that the records do not constitute public records under either Rule 803(8) or Rule 902(4), we remand for both parties to have full opportunity to present argument

as to the documents' admissibility, along with the trial court's simultaneous review, under these or any of our other Rules of Evidence. Because we vacate and remand on this issue, we need not reach Father's other argument on appeal.

## CONCLUSION

¶ 18          As its exclusion of the CPS Records was based on the misapprehension of law that public records—such as relevant child protective services records in a child custody modification proceeding—must be authenticated by live witness testimony, the trial court abused its discretion in excluding these records. We therefore vacate the Order and remand for the trial court to consider the admissibility of the CPS Records under North Carolina Rules of Evidence 803(8) and 902(4) as well as any other relevant evidence rules. On remand, the trial court should hold a new hearing on Mother's motion to modify the child custody order and both parties shall have the opportunity to present argument on the documents' admissibility.

VACATED AND REMANDED.

Judges DIETZ and COLLINS concur.